**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUAN ROSARIO SANTIAGO, AS** | : | **CIVIL ACTION** |
| **ADMINISTRATOR OF THE ESTATE OF** | : | |
| **JUAN YADIEL ROSARIO LOPEZ,** | : | |
| **DECEASED** | : | **NO: _____** |
| **924 Carver Street** | : | |
| **Philadelphia, Pennsylvania 19124** | : | |
| | : | **FORMERLY** |
| **PLAINTIFF** | : | **COURT OF COMMON PLEAS** |
| | : | **TRIAL DIVISION—CIVIL** |
| **v.** | : | |
| | : | **JULY TERM, 2023** |
| | : | **NO. 1473** |
| **CITY OF PHILADELPHIA** | : | **JURY TRIAL DEMANDED** |
| **1515 Arch Street, 14th Floor** | : | |
| **Philadelphia, Pennsylvania 19102** | : | |
| | : | |
| **and** | : | |
| | : | |
| **PHILADELPHIA DEPARTMENT OF** | : | |
| **PRISONS** | : | |
| **7901 State Road** | : | |
| **Philadelphia, Pennsylvania 19136** | : | |
| | : | |
| **and** | : | |
| | : | |
| **BLANCHE CARNEY** | : | |
| **7901 State Road** | : | |
| **Philadelphia, Pennsylvania 19136** | : | |
| | : | |
| **and** | : | |
| | : | |
| **MICHELE FARRELL** | : | |
| **7901 State Road** | : | |
| **Philadelphia, Pennsylvania 19136** | : | |
| | : | |
| **and** | : | |
| | : | |
| **NANCY GIANNETTA** | : | |
| **7901 State Road** | : | |
| **Philadelphia, Pennsylvania 19136** | : | |
| | : | |
| **and** | : | |

|  | : |
| --- | --- |
| **LT. IVAN MARSHALL**<br>**7901 State Road**<br>**Philadelphia, Pennsylvania 19136** | :<br>:<br>: |
|  | : |
| **and** | : |
|  | : |
| **SGT. SHAWN JAY**<br>**7901 State Road**<br>**Philadelphia, Pennsylvania 19136** | :<br>:<br>: |
|  | : |
| **and** | : |
|  | : |
| **CORRECTIONS OFFICER POOLE**<br>**7901 State Road**<br>**Philadelphia, Pennsylvania 19136** | :<br>:<br>: |
|  | : |
| **and** | : |
|  | : |
| **CORIZON HEALTH, INC.**<br>**105 Westpark Drive**<br>**Brentwood, Tennessee 37027** | :<br>:<br>: |
|  | : |
| **and** | : |
|  | : |
| **MOHAMMED HAQUE, MD**<br>**7901 State Road**<br>**Philadelphia, Pennsylvania 19136** | :<br>:<br>: |
|  | : |
| **and** | : |
|  | : |
| **VICTORIA TUNACAO, RN**<br>**7901 State Road**<br>**Philadelphia, Pennsylvania 19136** | :<br>:<br>: |
|  | : |
| **and** | : |
|  | : |
| **DANIELLE MCGETTIGAN, LPN**<br>**7901 State Road**<br>**Philadelphia, Pennsylvania 19136** | :<br>:<br>: |
|  | : |
| **and** | : |
|  | : |
| **KEVIN RAINES, LPN**<br>**7901 State Road** | :<br>: |

Philadelphia, Pennsylvania 19136           :
                                           :
and                                        :
                                           :
SARAH DEROSE, RN                           :
7901 State Road                            :
Philadelphia, Pennsylvania 19136           :
                                           :
and                                        :
                                           :
EMMANUEL O. MARINHO, RN                    :
7901 State Road                            :
Philadelphia, Pennsylvania 19136           :
                                           :
and                                        :
                                           :
NAJLA DEM1IS, LPN                          :
7901 State Road                            :
Philadelphia, Pennsylvania 19136           :
                                           :
and                                        :
                                           :
SUPERVISOR/CORRECTION                      :
OFFICER JOHN DOE(S) 1 – 10                 :
7901 State Road                            :
Philadelphia, Pennsylvania 19136           :
                                           :
and                                        :
                                           :
CORIZON HEALTH JOHN DOE(S) 1- 10           :
7901 State Road                            :
Philadelphia, Pennsylvania 19136           :
                                           :
     DEFENDANTS.                           :

---

## NOTICE OF REMOVAL

      **To the Honorable Judges of the United States District Court for the Eastern District of Pennsylvania.**

      Pursuant to 28 U.S.C. § 1441, Defendant the City of Philadelphia ("Petitioner"), through its undersigned counsel, respectfully petitions for the removal of this action to the United States

District Court for the Eastern District of Pennsylvania.  In support thereof, Petitioner states the following:

1.      On July 17, 2023, Juan Rosario Santiago, as Administrator of the Estate of Juan Yadiel Rosario Lopez ("Plaintiff") initiated this action by complaint (the "Complaint") in the Court of Common Pleas in Philadelphia, July Term, 2023; No. 1473.  (A true and correct copy of the Complaint is attached hereto at Exhibit "A.")

2.      On July 26, 2023, Plaintiff served the Complaint on Petitioner (A true and correct copy of the docket showing acceptance of service is attached hereto at Exhibit "B.")

3.      Defendants Blanche Carney, Michele Farrell, Nancy Giannetta, Lt. Ivan Marshall, Sgt. Shawn Jay, Corrections Officer Poole consent to removal.

4.      Through counsel for YesCare, the medical defendants, though improperly served at State Road, also consent to removal.

5.      In Counts I-III of the Complaint, Plaintiff seeks relief pursuant to 42 U.S.C. § 1983[1] for alleged deprivations of Plaintiff's rights protected by the Constitution of the United States. (*See* Exhibit B.)

6.      28 U.S.C. § 1331 states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

7.      The United States District Court for the Eastern District of Pennsylvania has original jurisdiction over the claim alleged by Plaintiff pursuant to 28 U.S.C. § 1331.

8.      True and correct copies of this Notice of Removal with accompanying exhibits and separate Notice to State Court of Filing of Notice of Removal, a copy of which is attached hereto

---

[1] Petitioner notes that Counts I-III are each stylized as "Federal Constitutional Claim," and allege liability under theories of deliberate indifference, failure to train/supervise, and *Monell.* As such, liability appears to be asserted pursuant to 42 U.S.C. § 1983.

at Exhibit "C," will be served upon the Plaintiff and filed with the Office of Judicial Records of the Court of Common Pleas of Philadelphia County, Pennsylvania, in accordance with the provisions of 28 U.S.C. § 1446(d).

9.      In filing this Notice of Removal, Petitioner does not waive any available defenses in this action.

**WHEREFORE,** Petitioner respectfully requests that the captioned Complaint be removed to the United States District Court for the Eastern District of Pennsylvania.

Respectfully submitted,

BY:      */s/ Anne B. Taylor*
         **ANNE B. TAYLOR**
         Chief Deputy City Solicitor
         PA Attorney I.D. 206057
         City of Philadelphia Law Department
         1515 Arch Street, 14th Floor
         Philadelphia, PA 19102
         (215) 683-5381
         (215) 683-5397 (fax)
         anne.taylor@phila.gov

Date:

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| **JUAN ROSARIO SANTIAGO, AS** | : | **CIVIL ACTION** |
| **ADMINISTRATOR OF THE ESTATE OF** | : | |
| **JUAN YADIEL ROSARIO LOPEZ,** | : | |
| **DECEASED** | : | **NO: _____** |
| **924 Carver Street** | : | |
| **Philadelphia, Pennsylvania 19124** | : | |
| | : | **FORMERLY** |
| **PLAINTIFF** | : | **COURT OF COMMON PLEAS** |
| | : | **TRIAL DIVISION—CIVIL** |
| **v.** | : | |
| | : | **JULY TERM, 2023** |
| | : | **NO. 1473** |
| **CITY OF PHILADELPHIA** | : | **JURY TRIAL DEMANDED** |
| **1515 Arch Street, 14th Floor** | : | |
| **Philadelphia, Pennsylvania 19102** | : | |
| | : | |
| **and** | : | |
| | : | |
| **PHILADELPHIA DEPARTMENT OF** | : | |
| **PRISONS** | : | |
| **7901 State Road** | : | |
| **Philadelphia, Pennsylvania 19136** | : | |
| | : | |
| **and** | : | |
| | : | |
| **BLANCHE CARNEY** | : | |
| **7901 State Road** | : | |
| **Philadelphia, Pennsylvania 19136** | : | |
| | : | |
| **and** | : | |
| | : | |
| **MICHELE FARRELL** | : | |
| **7901 State Road** | : | |
| **Philadelphia, Pennsylvania 19136** | : | |
| | : | |
| **and** | : | |
| | : | |
| **NANCY GIANNETTA** | : | |
| **7901 State Road** | : | |
| **Philadelphia, Pennsylvania 19136** | : | |
| | : | |
| **and** | : | |

|  | : |
|---|---|
| **LT. IVAN MARSHALL** | : |
| **7901 State Road** | : |
| **Philadelphia, Pennsylvania 19136** | : |
|  | : |
| **and** | : |
|  | : |
| **SGT. SHAWN JAY** | : |
| **7901 State Road** | : |
| **Philadelphia, Pennsylvania 19136** | : |
|  | : |
| **and** | : |
|  | : |
| **CORRECTIONS OFFICER POOLE** | : |
| **7901 State Road** | : |
| **Philadelphia, Pennsylvania 19136** | : |
|  | : |
| **and** | : |
|  | : |
| **CORIZON HEALTH, INC.** | : |
| **105 Westpark Drive** | : |
| **Brentwood, Tennessee 37027** | : |
|  | : |
| **and** | : |
|  | : |
| **MOHAMMED HAQUE, MD** | : |
| **7901 State Road** | : |
| **Philadelphia, Pennsylvania 19136** | : |
|  | : |
| **and** | : |
|  | : |
| **VICTORIA TUNACAO, RN** | : |
| **7901 State Road** | : |
| **Philadelphia, Pennsylvania 19136** | : |
|  | : |
| **and** | : |
|  | : |
| **DANIELLE MCGETTIGAN, LPN** | : |
| **7901 State Road** | : |
| **Philadelphia, Pennsylvania 19136** | : |
|  | : |
| **and** | : |
|  | : |
| **KEVIN RAINES, LPN** | : |
| **7901 State Road** | : |

Philadelphia, Pennsylvania 19136    :
:
and    :
:
**SARAH DEROSE, RN**    :
**7901 State Road**    :
**Philadelphia, Pennsylvania 19136**    :
:
and    :
:
**EMMANUEL O. MARINHO, RN**    :
**7901 State Road**    :
**Philadelphia, Pennsylvania 19136**    :
:
and    :
:
**NAJLA DEM1IS, LPN**    :
**7901 State Road**    :
**Philadelphia, Pennsylvania 19136**    :
:
and    :
:
**SUPERVISOR/CORRECTION**    :
**OFFICER JOHN DOE(S) 1 – 10**    :
**7901 State Road**    :
**Philadelphia, Pennsylvania 19136**    :
:
and    :
:
**CORIZON HEALTH JOHN DOE(S) 1- 10**    :
**7901 State Road**    :
**Philadelphia, Pennsylvania 19136**    :
:
    **DEFENDANTS.**    :

---

## NOTICE OF FILING OF REMOVAL

TO:  Dino Privitera
    Privitera Law Firm LLC
    123 S Broad St, Suite 1200
    Philadelphia PA 19109

    **PLEASE TAKE NOTICE THAT** on **August 25, 2023,** Defendant City of Philadelphia

filed, in the office of the Clerk of the United States District Court for the Eastern District of Pennsylvania, a verified Notice of Removal.

A copy of this Notice of Removal is attached hereto and is also being filed with the Clerk of the Court of Common Pleas of Philadelphia County, pursuant to Title 28, United States Code, Section 1446(e).

*/s/ Anne B. Taylor*
Anne B. Taylor
Chief Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
(215) 683-5381
(215) 683-5397 (fax)
anne.taylor@phila.gov

*Attorney for Defendant the City of Philadelphia*

- 4 -

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| **JUAN ROSARIO SANTIAGO, AS** | : | **CIVIL ACTION** |
| **ADMINISTRATOR OF THE ESTATE OF** | : | |
| **JUAN YADIEL ROSARIO LOPEZ,** | : | |
| **DECEASED** | : | **NO: _____** |
| **924 Carver Street** | : | |
| **Philadelphia, Pennsylvania 19124** | : | |
| | : | **FORMERLY** |
| **PLAINTIFF** | : | **COURT OF COMMON PLEAS** |
| | : | **TRIAL DIVISION—CIVIL** |
| **v.** | : | |
| | : | **JULY TERM, 2023** |
| | : | **NO. 1473** |
| **CITY OF PHILADELPHIA** | : | **JURY TRIAL DEMANDED** |
| **1515 Arch Street, 14th Floor** | : | |
| **Philadelphia, Pennsylvania 19102** | : | |
| | : | |
| **and** | : | |
| | : | |
| **PHILADELPHIA DEPARTMENT OF** | : | |
| **PRISONS** | : | |
| **7901 State Road** | : | |
| **Philadelphia, Pennsylvania 19136** | : | |
| | : | |
| **and** | : | |
| | : | |
| **BLANCHE CARNEY** | : | |
| **7901 State Road** | : | |
| **Philadelphia, Pennsylvania 19136** | : | |
| | : | |
| **and** | : | |
| | : | |
| **MICHELE FARRELL** | : | |
| **7901 State Road** | : | |
| **Philadelphia, Pennsylvania 19136** | : | |
| | : | |
| **and** | : | |
| | : | |
| **NANCY GIANNETTA** | : | |
| **7901 State Road** | : | |
| **Philadelphia, Pennsylvania 19136** | : | |
| | : | |

and                                                  :
                                                     :
**LT. IVAN MARSHALL**                                :
**7901 State Road**                                  :
**Philadelphia, Pennsylvania 19136**                 :
                                                     :
and                                                  :
                                                     :
**SGT. SHAWN JAY**                                   :
**7901 State Road**                                  :
**Philadelphia, Pennsylvania 19136**                 :
                                                     :
and                                                  :
                                                     :
**CORRECTIONS OFFICER POOLE**                        :
**7901 State Road**                                  :
**Philadelphia, Pennsylvania 19136**                 :
                                                     :
and                                                  :
                                                     :
**CORIZON HEALTH, INC.**                             :
**105 Westpark Drive**                               :
**Brentwood, Tennessee 37027**                       :
                                                     :
and                                                  :
                                                     :
**MOHAMMED HAQUE, MD**                               :
**7901 State Road**                                  :
**Philadelphia, Pennsylvania 19136**                 :
                                                     :
and                                                  :
                                                     :
**VICTORIA TUNACAO, RN**                             :
**7901 State Road**                                  :
**Philadelphia, Pennsylvania 19136**                 :
                                                     :
and                                                  :
                                                     :
**DANIELLE MCGETTIGAN, LPN**                         :
**7901 State Road**                                  :
**Philadelphia, Pennsylvania 19136**                 :
                                                     :
and                                                  :
                                                     :
**KEVIN RAINES, LPN**                                :

- 2 -

**7901 State Road**                       :
**Philadelphia, Pennsylvania 19136**      :
                                          :
**and**                                   :
                                          :
**SARAH DEROSE, RN**                      :
**7901 State Road**                       :
**Philadelphia, Pennsylvania 19136**      :
                                          :
**and**                                   :
                                          :
**EMMANUEL O. MARINHO, RN**               :
**7901 State Road**                       :
**Philadelphia, Pennsylvania 19136**      :
                                          :
**and**                                   :
                                          :
**NAJLA DEM1IS, LPN**                     :
**7901 State Road**                       :
**Philadelphia, Pennsylvania 19136**      :
                                          :
**and**                                   :
                                          :
**SUPERVISOR/CORRECTION**                 :
**OFFICER JOHN DOE(S) 1 – 10**            :
**7901 State Road**                       :
**Philadelphia, Pennsylvania 19136**      :
                                          :
**and**                                   :
                                          :
**CORIZON HEALTH JOHN DOE(S) 1- 10**      :
**7901 State Road**                       :
**Philadelphia, Pennsylvania 19136**      :
                                          :
      **DEFENDANTS.**                     :

---

## <u>CERTIFICATE OF SERVICE</u>

     I, Anne B. Taylor, do hereby certify that a true and correct copy of the attached Notice of

Removal has been served upon Plaintiff's attorney on the date indicated below:

TO:    Dino Privitera
          Privitera Law Firm LLC
          123 S Broad St, Suite 1200

- 3 -

Philadelphia PA 19109

/s/ Anne B. Taylor
Anne B. Taylor
Chief Deputy City Solicitor
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
(215) 683-5381
(215) 683-5397 (fax)
anne.taylor@phila.gov

*Attorney for Defendant the City of Philadelphia*

Date:  August 25, 2023

# EXHIBIT A

**THE PRIVITERA LAW FIRM LLC**
**By: Dino Privitera, Esquire**
   **Identification No: 69814**
**123 S. Broad Street; Suite 1200**
**Philadelphia, PA 19109**
**(215) 709-7007 (phone)**
**(215) 501-5934 (fax)**
dino@priviteralaw.com

**ATTORNEY FOR PLAINTIFF**
**JUAN ROSARIO SANTIAGO, AS**
**ADMINISTRATOR OF THE**
**ESTATE OF JUAN YADIEL**
**ROSARIO LOPEZ, DECEASED**

**MAJOR CIVIL JURY CASE**

Filed and Attested by the
Office of Judicial Records
17 JUL 2023 01:24 pm
G. IMPERATO

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**CIVIL TRIAL DIVISION**

| | |
|---|---|
| Juan Rosario Santiago, as Administrator of the Estate of Juan Yadiel Rosario Lopez, deceased 924 Carver Street Philadelphia, Pennsylvania 19124 Plaintiff | _____ TERM, 2023 |
| v. | NO. |
| City of Philadelphia 1515 Arch Street, 14th Floor Philadelphia, Pennsylvania 19102 and | CIVIL ACTION |
| Philadelphia Department of Prisons 7901 State Road Philadelphia, Pennsylvania 19136 and | JURY TRIAL DEMANDED |
| Blanche Carney 7901 State Road Philadelphia, Pennsylvania 19136 and | |
| Michele Farrell 7901 State Road Philadelphia, Pennsylvania 19136 and | |
| Nancy Giannetta 7901 State Road Philadelphia, Pennsylvania 19136 and | |
| Lt. Ivan Marshall 7901 State Road Philadelphia, Pennsylvania 19136 and | |
| Sgt. Shawn Jay 7901 State Road Philadelphia, Pennsylvania 19136 | |

1

Case ID: 230701473

and
Corrections Officer Poole
7901 State Road
Philadelphia, Pennsylvania 19136
and
Corizon Health, Inc.
105 Westpark Drive
Brentwood, Tennessee 37027
and
Mohammed Haque, MD
7901 State Road
Philadelphia, Pennsylvania 19136
and
Victoria Tunacao, RN
7901 State Road
Philadelphia, Pennsylvania 19136
and
Danielle McGettigan, LPN
7901 State Road
Philadelphia, Pennsylvania 19136
and
Kevin Raines, LPN
7901 State Road
Philadelphia, Pennsylvania 19136
and
Sarah DeRose, RN
7901 State Road
Philadelphia, Pennsylvania 19136
and
Emmanuel O. Marinho, RN
7901 State Road
Philadelphia, Pennsylvania 19136
and
Najla Dennis, LPN
7901 State Road
Philadelphia, Pennsylvania 19136
and
Supervisor/Correction Officer John Doe(s) 1 – 10
7901 State Road
Philadelphia, Pennsylvania 19136
and
Corizon Health John Doe(s) 1 – 10
7901 State Road
Philadelphia, Pennsylvania 19136

Defendants

2

Case ID: 230701473

## NOTICE TO DEFEND

| NOTICE | AVISO |
| --- | --- |
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.<br><br>*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*<br><br>Philadelphia Bar Association<br>Lawyer Referral and Information Service<br>1101 Market Street, 11th Floor<br>Philadelphia, Pennsylvania 19107<br>(215) 238-6333<br>TTY (215) 451-6197 | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.<br>*Lleve esta demanda a un abogado inmediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*<br><br>Asociacion De Licenciados De Filadelfia<br>Servicio De Referencia E Informacion Legal<br>1101 Market Street, 11th Floor<br>Filadelfia, Pennsylvania 19107<br>(215) 238-6333<br>TTY (215) 451-6197 |

## CIVIL ACTION COMPLAINT

Plaintiff Juan Rosario Santiago, as Administrator of the Estate of Juan Yadiel Rosario Lopez, deceased, by and through his attorney, alleges as follows:

### I. PRELIMINARY STATEMENT

1.     This civil rights and wrongful death action arises from the death of Juan Yadiel

3

Case ID: 230701473

Rosario Lopez, a 28-year-old father of minor son, who died as a result of the conduct of the Defendants in failing to properly monitor and treat him while going through opioid withdrawal at the Curran Fromhold Correctional Facility, where he was being held as a pretrial detainee, allowing him to become sicker and sicker until he was found unresponsive in his cell under the Defendants' watch and later died at the hospital from complications of drug intoxication. Mr. Rosario Lopez's death was a foreseeable and direct result of the conduct of the individual, supervisory, policy-maker, municipal and institutional Defendants who were aware of, and failed to remedy, their constitutionally infirm and deficient policies, practices, customs, procedures and training which had resulted in numerous prior inmate deaths from drug overdose at the Curran Fromhold Correctional Facility.

## II. <u>JURISDICTION AND VENUE</u>

2.      This Court has jurisdiction over this action pursuant to the provisions of the Judicial Code, 42 Pa. C.S. §§323, 912, 931(a) and Article V, Section 5(b) of the Pennsylvania Constitution.

3.      Venue is proper in the Court of Common Pleas of Philadelphia County, Pennsylvania pursuant to Pa. Rules of Civ. P. 1006(a)(1), 1006(b), 1006(c)(1), 2179(a)(1), 2179(a)(2) and/or 2103(b).

## III. <u>PARTIES</u>

4.      Plaintiff Juan Rosario Santiago ("Mr. Rosario Santiago" or "Plaintiff") is the father of Juan Yadiel Rosario Lopez ("Mr. Rosario Lopez" or "decedent"), and an adult citizen and resident of the Commonwealth of Pennsylvania, currently residing at the address set forth in the above caption.

4

Case ID: 230701473

5.      On December 1, 2021, Plaintiff was duly appointed the Administrator of the Estate of Juan Yadiel Rosario Lopez, deceased, by the Office of the Register of Wills of Philadelphia County. (*See* Letters of Administration, attached hereto as Ex. "A").

6.      Prior to his death, decedent Juan Yadiel Rosario Lopez was an adult citizen and resident of the County and City of Philadelphia, in the Commonwealth of Pennsylvania, who died on July 27, 2021, as a result of events that occurred while he was a pretrial detainee at CFCF. At the time of his death, decedent was only twenty-eight (28) years old, and the father of one minor child, now age 8.

7.      Defendant City of Philadelphia is a municipality and political subdivision of the Commonwealth of Pennsylvania with a business address at the address set forth in the above caption.

8.      At all times relevant hereto, Defendant City of Philadelphia ("City of Philadelphia" or "City") funded, supervised, controlled, operated, managed and oversaw the Philadelphia Department of Prisons, and was responsible for establishing policies and procedures, budgets, staffing, hiring, training and supervising employees, contracting for specialty and medical services and providing administrative duties relevant to the operation and management of the Philadelphia Department of Prisons, and for reasonably ensuring the medical needs, safety, health and well-being of pretrial detainees and other inmates in its custody.

9.      Defendant Philadelphia Department of Prisons ("PDP") is a local government unit within the County and City of Philadelphia, in the Commonwealth of Pennsylvania, with business offices located at 7901 State Road in Philadelphia, Pennsylvania. Defendant PDP is operated by the City of Philadelphia.

Case ID: 230701473

10.     At all times relevant hereto, the PDP was supposed "to provide a secure correctional environment that adequately detains persons accused or convicted of illegal acts; to provide programs; services, and supervision in a safe, lawful, clean, and humane environment."

11.     At all times relevant hereto, Defendants City of Philadelphia and/or PDP operated four jail facilities within the County and City of Philadelphia, among which included Curran-Fromhold Correctional Facility ("CFCF"), which is located at 7901 State Road., Philadelphia, PA 19136.

12.     Upon information and belief, Defendant Commissioner Blanche Carney ("Commissioner Carney"), is an adult individual who, at alle relevant times, was an employee of the City of Philadelphia and/or the PDP and was the Commissioner of the PDP with a business address at the address set forth in the above caption.

13.     At all relevant times hereto, Defendant Commissioner Carney was responsible for the promulgation and enforcement of the policies and procedures governing the management and operation of the PDP, including CFCF, and was a final policymaker regarding correctional officer staffing levels within the PDP, including those assigned to CFCF.

14.     Upon information and belief, Defendant Warden Michele Farrell ("Warden Farrell") is an adult individual who, at all times relevant hereto, was employed by the City of Philadelphia and/or the PDP and was a Warden at CFCF with a business address at the address set forth in the above caption.

15.     At all times relevant hereto, Defendant Warden Farrell was responsible for the assignments, staffing, and operations of CFCF, and for ensuring the safety, health and well-being of detainees and inmates, including the implementation and enforcement of appropriate policies

6

Case ID: 230701473

and procedures governing the care, supervision and treatment of pretrial detainees housed at CFCF, including decedent Juan Yadiel Rosario Lopez.

16.     Upon information and belief, Defendant Warden Nancy Giannetta ("Warden Giannetta"), is an adult individual who, at all times relevant hereto, was employed by the City of Philadelphia and/or the PDP and was a Warden at CFCF with a business address at the address set forth in the above caption.

17.     At all times relevant hereto, Defendant Warden Giannetta was responsible for Admissions and Diagnostics at CFCF, and for ensuring inmate placement and safety, including the implementation of appropriate policies and procedures governing the care, supervision and treatment of pretrial detainees housed at CFCF, including decedent Juan Yadiel Rosario Lopez.

18.     Upon information and belief, Defendant Lt. Ivan Marshall ("Lt. Marshall") is an adult individual who, at all times relevant hereto, was employed by the City of Philadelphia and/or PDP as a Supervisor and/or Correctional Officer assigned to CFCF, and was responsible for supervising the conduct of other corrections officers and/or for reasonably ensuring the medical needs, safety, health and well-being of pretrial detainees and other inmates in custody at CFCF, including decedent Juan Yadiel Rosario Lopez.  Defendant Lt. Marshall has a business address at the address set forth in the above caption.

19.     Upon information and belief, Defendant Sgt. Shawn Jay ("Sgt. Jay") is an adult individual who, at all times relevant hereto, was employed by the City of Philadelphia and/or PDP as a Supervisor and/or Correctional Officer assigned to CFCF, and was responsible for supervising the conduct of other corrections officers and/or for reasonably ensuring the medical needs, safety, health and well-being of pretrial detainees and other inmates in custody at CFCF, including

Case ID: 230701473

decedent Juan Yadiel Rosario Lopez. Defendant Sgt. Jay has a business address at the address set forth in the above caption.

20.    Upon information and belief, Defendant Corrections Officer [Jeffrey] Poole ("C/O Poole") is an adult individual who, at all times relevant hereto, was employed by the City of Philadelphia and/or the PDP as a Correctional Officer assigned to CFCF, and was responsible for supervising, monitoring and reasonably ensuring the medical needs, safety, health and well-being of pretrial detainees and other inmates in custody at CFCF, including decedent Juan Yadiel Rosario Lopez. Defendant Poole's first name is unknown at this time, but will be amended upon discovery. Defendant C/O Poole has a business address at the address set forth in the above caption.

21.    Defendant Corizon Health, Inc. ("Corizon Health") is a corporation and/or other business entity, which is registered with the Pennsylvania Department of State to conduct business in the Commonwealth of Pennsylvania, does conduct regular, continuous, substantial and profitable business in the City and County of Philadelphia, Pennsylvania and maintains a principal place of business located at the address set forth in the above caption.

22.    At all relevant times hereto, Defendant Corizon Health held itself out to the general public as an expert provider of correctional health care and held a contract with Defendant City of Philadelphia to provide competent and comprehensive medical services to persons incarcerated within the PDP, including CFCF, including appropriate staffing, supervising and training of doctors, nurses and other medical personnel, formulating and enforcing appropriate policies and procedures regarding inmate medical issues, administering and monitoring opiate detoxification or withdrawal programs, medical monitoring, performing daily inmate evaluations and screenings and/or distribution of prescribed medications.   The claims asserted against Defendant Corizon

Case ID: 230701473

Health are for the professional negligence of its agents, ostensible agents, employees and servants, and for its direct negligence as stated more fully herein.

23.     At all times relevant hereto, Defendant Corizon Health was acting by and through its actual and/or ostensible agents, servants, workmen, contractors and/or employees, including the individual Defendants named herein as well as other physicians, nurses, therapists, technicians and/or medical practice personnel whose activities and conduct with regard to the medical care and treatment provided to decedent Juan Yadiel Rosario Lopez are presently known only to the Defendant, but not Plaintiff, after reasonable investigation and in the absence of any discovery.

24.     At all times relevant hereto, Defendant Corizon Health was vicariously liable for the negligent acts and/or omissions of its actual and/or ostensible agents, servants, workmen, contractors and/or employees, including the individual Defendants named herein as well as other physicians, nurses, therapists, technicians and/or medical practice personnel whose activities and conduct with regard to the medical care and treatment provided to decedent Juan Yadiel Rosario Lopez are presently known only to the Defendant, but not Plaintiff, after reasonable investigation and in the absence of any discovery.

25.     Upon information and belief, Defendant Mohammed Haque, MD ("Dr. Haque") is an adult individual who, at all times relevant hereto, was employed as a licensed physician by Defendant Corizon Health and was assigned to provide medical services to pretrial detainees housed at CFCF, including decedent Juan Yadiel Rosario Lopez.  Defendant Dr. Haque has a business address at the address set forth in the above caption.

26.     Upon information and belief, Defendant Victoria Tunacao, RN ("Nurse Tunacao") is an adult individual who, at all times relevant hereto, was employed as a registered nurse by Defendant Corizon Health and was assigned to provide medical services to pretrial detainees

Case ID: 230701473

housed at CFCF, including decedent Juan Yadiel Rosario Lopez. Defendant Nurse Tunacao has a business address at the address set forth in the above caption.

27.     Upon information and belief, Defendant Danielle McGettigan, LPN ("Nurse McGettigan") is an adult individual who, at all times relevant hereto, was employed as a licensed practical nurse by Defendant Corizon Health and was assigned to provide medical services to pretrial detainees housed at CFCF, including decedent Juan Yadiel Rosario Lopez. Defendant Nurse McGettigan has a business address at the address set forth in the above caption.

28.     Upon information and belief, Defendant Kevin Raines, LPN ("Nurse Raines") is an adult individual who, at all times relevant hereto, was employed as a licensed practical nurse by Defendant Corizon Health and was assigned to provide medical services to pretrial detainees housed at CFCF, including decedent Juan Yadiel Rosario Lopez. Defendant Nurse Raines has a business address at the address set forth in the above caption.

29.     Upon information and belief, Defendant Sarah DeRose, RN ("Nurse DeRose") is an adult individual who, at all times relevant hereto, was employed as a registered nurse by Defendant Corizon Health and was assigned to provide medical services to pretrial detainees housed at CFCF, including decedent Juan Yadiel Rosario Lopez. Defendant Nurse DeRose has a business address at the address set forth in the above caption.

30.     Upon information and belief, Defendant Emmanuel O. Marinho, RN ("Nurse Marinho") is an adult individual who, at all times relevant hereto, was employed as a registered nurse by Defendant Corizon Health and was assigned to provide medical services to pretrial detainees housed at CFCF, including decedent Juan Yadiel Rosario Lopez. Defendant Nurse Marinho has a business address at the address set forth in the above caption.

Case ID: 230701473

31.    Upon information and belief, Defendant Najla Dennis, LPN ("Nurse Dennis") is an adult individual who, at all times relevant hereto, was employed as a licensed practical nurse by Defendant Corizon Health and was assigned to provide medical services to pretrial detainees housed at CFCF, including decedent Juan Yadiel Rosario Lopez.  Defendant Nurse Dennis has a business address at the address set forth in the above caption.

32.    Pursuant to Pa. R. Civ. P. 2005, in addition to and/or in place of the individual Defendants named above, Plaintiff further designates the following unknown individual Defendants by the fictitious "John Doe Defendant" designations in this Complaint.

33.    Defendants Supervisor/Correction Officer John Doe(s) 1 – 10 are currently unidentified Supervisors and/or Correctional Officers who were employed by Defendants City of Philadelphia and/or the PDP all of whom had been assigned to CFCF and were responsible for supervising, monitoring and/or caring for pretrial detainees  housed at CFCF, including decedent Juan Yadiel Rosario Lopez.

34.    Defendants Supervisor/Correction Officer John Doe(s) 1 – 10 are fictitious party names; the true identities of which are presently unknown to Plaintiff after having conducted a reasonable search with due diligence to determine same.   Upon proper identification, the Supervisor/Correction Officer Doe Defendants may be properly served where they may be found and their true names and identities added to this Complaint in accordance with the applicable Pennsylvania Rules of Civil Procedure.

35.    Defendants Corizon Health John Doe(s) 1 – 10 are currently unidentified Physicians, Nurses or other Medical Personnel who were employed by Defendant Corizon Health, all of whom had been assigned to CFCF and were responsible for providing medical services,

11

Case ID: 230701473

supervising, monitoring and/or caring for pretrial detainees housed at CFCF, including decedent Juan Yadiel Rosario Lopez.

36.     Defendants Corizon Health John Doe(s) 1 – 10 are fictitious party names; the true identities of which are presently unknown to Plaintiff after having conducted a reasonable search with due diligence to determine same.  Upon proper identification, the Corizon Doe Defendants may be properly served where they may be found and their true names and identities added to this Complaint in accordance with the applicable Pennsylvania Rules of Civil Procedure.

37.     At all times relevant hereto, Defendants were acting or working in their capacities as agents, ostensible agents, servants, workmen, contractors and/or employees of Defendants City of Philadelphia, PDP and/or Corizon Health, were acting and working within the scope, course and authority of their employment, and were acting under the direct control and supervision of their employers.

38.     At all times relevant hereto, Defendants acted under color of state law and/or authority provided to them by virtue of their employment status.

39.     At all times relevant hereto, Defendants acted in concert and conspiracy and their actions deprived Plaintiff's decedent of his constitutional rights, and were individually, jointly and severally responsible for the harms caused to Plaintiff's decedent, including his death.

40.     At all relevant times hereto, Defendants personally participated in the constitutional and civil rights deprivations asserted herein.

41.     Defendants are being sued in their official and individual capacities.

### IV. **FACTUAL ALLEGATIONS**

42.     Plaintiff incorporates by reference herein the allegations set forth in the preceding paragraphs of this Complaint, inclusive, as if set forth herein at length.

Case ID: 230701473

43.     Prior to Juan Yadiel Rosario Lopez's incarceration on July 22, 2021, policymakers, administrators, supervisors, officers and/or employees in the PDP and at Corizon Health, and specifically those in charge of the operation of the CFCF, were or should have been aware of the dangers to people suffering from opioid addiction entering CFCF and specifically the dangers associated with not properly treating and monitoring people going through opioid withdrawal or detoxification.

44.     The residents of Philadelphia, like decedent, along with residents of many other communities in Pennsylvania, have been subjected to devastating public health epidemics of opioid addiction and overdose.

45.     Policymakers, administrators, supervisors, officers and/or employees in the PDP and at Corizon Health knew or should have known prior to decedent's admission to CFCF in July 2021 that opioid and heroin addiction were chronic diseases that were directly detrimental to the community, and that opioid dependent or addicted persons were frequently biologically induced to act in an anti-social manner that may be totally inconsistent with that person's character.

46.     Policymakers, administrators, supervisors, officers and/or employees in the PDP and at Corizon Health were or should have been aware that the behavior induced by chronic opioid and heroin addiction would bring individuals in contact with the criminal justice system and specifically CFCF.

47.     Policymakers, administrators, supervisors, officers and/or employees in the PDP and practitioners of correctional healthcare at Corizon Health were or should have been aware of these patterns of increased abuse of heroin and other opioid-based controlled substances and the effect on the PDP population.

Case ID: 230701473

48.     Policymakers, administrators, supervisors, officers and/or employees in the PDP and practitioners of correctional healthcare at Corizon Health were or should have been particularly attuned to patterns of heroin and opioid abuse due to the disproportionately high number of heroin and opioid abusers typically present in a correctional population.

49.     Policymakers, administrators, supervisors, officers and/or employees in the PDP and practitioners of correctional healthcare at Corizon were or should have been aware of the significant medical issues presented in heroin users detoxifying from heroin due to sudden termination of their usage upon admission to a correctional facility.

50.     Although withdrawal for heroin or opioid users when it takes place with proper monitoring and treatment, should not pose a serious medical risk to an individual, it was known or should have been known to policymakers, administrators, supervisors, officers and/or employees of the City of Philadelphia, PDP and Corizon Health that potentially fatal medical consequences can result from the failure to properly monitor and treat people experiencing heroin /opioid withdrawal.

51.     Monitoring and assessment is necessary to ensure that people experiencing heroin detoxification are not at risk for developing more serious medical consequences.

52.     Despite knowledge of the serious medical risks to people withdrawing from heroin and opioids, the City of Philadelphia, PDP and Corizon Health failed to provide adequate policies, procedures, customs and practices and training in treating and monitoring inmates going through heroin and opioid withdrawal.

A.     **Mr. Rosario Lopez's Preventable and Unnecessary Death from Drug Withdrawal.**

53.     On July 21, 2021, at approximately 9:35 AM, in the area of 420 E. Cambria Street, Philadelphia, PA, Mr. Rosario Lopez was taken into custody by Philadelphia police officers for

Case ID: 230701473

alleged drug offenses.  Later that evening, at approximately 7:09 PM, Mr. Rosario Lopez was arraigned and charged with possession with intent to deliver a controlled substance, i.e., suspected heroin/fentanyl.

54.     In the morning of July 22, 2021, at approximately 8:21 AM, Mr. Rosario Lopez was transported and admitted to CFCF, the main intake facility for males housed in the PDP facilities.

55.     At all times relevant here to, Mr. Rosario Lopez was housed at CFCF as a pretrial detainee under a constitutional presumption of innocence.

56.     At all times relevant hereto, Mr. Rosario Lopez was under the care, custody and control of administrators, supervisors, correctional officers and/or medical staff, including all individual Defendants named herein, and was dependent on them for appropriate medical care and for his life, shelter, health, safety and well-being.

57.     Upon admission to CFCF, Defendant C/O Poole and/or Defendant Nurse Tunacao conducted an initial intake questionnaire of Mr. Rosario Lopez.

58.     Upon information and belief, the intake questionnaire consisted of a series of basic health-related questions that the intake officer asks the detainee at admission at CFCF, but, upon information and belief, none of the questions posed to the detainee specifically asked about recent opioid use.

59.     After his admission at CFCF, Mr. Rosario Lopez was assigned to a holding cell in the Intake/Receiving unit of CFCF, believed to be designated as "RCVG, B21, 06," for further processing, which is a location specifically designed for the housing of people newly admitted to the facility.

Case ID: 230701473

60.     Among other things, in addition to the initial intake screening questionnaire, the intake procedures require that pretrial detainees and other inmates go through an additional orientation, social services assessment, housing classification and medical screening.

61.     For those pretrial detainees and inmates who are found to be addicted to opioids and suffering from withdrawal symptoms, among other things, the medical staff is required to perform a clinical opiate withdrawal scale ("COWS"), which helps a clinician determine the stage and severity of an inmate's drug withdrawal.

62.     Basic recognized standards of correctional medical care also require that individuals who are admitted to correctional facilities, including CFCF, with a known history of heroin or other opioid abuse, in conjunction with withdrawal, be placed under strict medical monitoring.

63.     Upon information and belief, such monitoring must include medical assessments multiple times per day of vital signs, including pulse, respiration, blood pressure and body temperature as well as regular cell checks to monitor the health, safety and well-being of individuals suffering from withdrawal.

64.     Upon information and belief, such monitoring must also include evaluation multiple times per day of symptoms which are consistent with serious health consequences of withdrawal, such as seizures, vomiting, diarrhea, anxiety, sweating and restlessness.

65.     Monitoring, assessment and evaluation of this extent and nature is a medical necessary to ensure that an inmate experiencing drug withdrawal is not at risk for serious medical consequences or death.

66.     At all relevant times hereto, Defendants were aware that Mr. Rosario Lopez was experiencing opioid withdrawal and at risk of serious medical consequences or death and that

Case ID: 230701473

appropriate opioid withdrawal observation and close, regular and frequent monitoring of his medical condition by both correctional officers and medical staff was necessary to ensure his health, safety and well-being.

67.     The risk of an opioid-addicted or dependent individual to suffer serious medical consequences or death from withdrawal is especially pronounced for those persons with known substance abuse issues who have experienced an abrupt and sudden stoppage of regular usage due to arrest and imprisonment, such as in Mr. Rosario Lopez's case.

68.     At all relevant times hereto, Defendants also were responsible for ensuring that inmates received effective and proper medications to treat their medical conditions, and that mediations necessary to effectively treat withdrawal were taken on a regular basis as prescribed and actually ingested by detainees and other inmates, in order to maintain the efficacy and integrity of the withdrawal therapy program.

69.     Upon information and belief, later in the morning of July 22, 2021, at approximately 11:30 AM, Mr. Rosario Lopez underwent an initial intake medical assessment, which included obtaining a basic medical history, administering a tuberculin skin implant, COVID-19 testing, rapid HIV testing and specimen collection of urine and blood for sexually-transmitted disease testing.   A computerized "Pre-Intake Screening" form, believed to have been completed nu medical staff as part of the medical screen, was checked "no" to the question of whether Mr. Rosario Lopez was currently abusing opiates.

70.     Upon information and belief, later in the evening of July 22, 2021, Mr. Rosario Lopez began to experience symptoms of opioid withdrawal and reported his medical condition to correctional and/or medical staff at CFCF.   He also reported that he had asthma.

Case ID: 230701473

71.     According to medical records, on July 22, 2021, at 6:00 PM, a COWS assessment was performed and, based on the score, it was determined that Mr. Rosario Lopez was experiencing moderate withdrawal symptoms, including gooseflesh, sweats, tremors, diarrhea, headache, yawning, bone aches, nausea/vomiting, and increasing irritability and anxiousness.

72.     According to medical records, at 6:30 PM, based on the elevated COWS withdrawal score, Mr. Rosario Lopez was seen in the intake area by nursing staff with a chief complaint of heroin "withdrawal" symptoms.  At that time, Mr. Rosario Lopez reported to medical staff that he had struggled with substance abuse and gave a specific and detailed account of his substance abuse history, including his daily usage of heroin of a bundle (10 bags) a day for a period of 3 years and that he had last used heroin on the day of his arrest, July 21, 2021.

73.     According to medical records, it was determined that emergency intervention was not required at that time, Mr. Rosario Lopez was instructed to contact medical staff if new symptoms developed or current symptoms worsened, and he was placed on medical monitoring protocol for his withdrawal.

74.     According to medical records, at 7:06 PM, Defendant Nurse Tunacao entered a telephone verbal order note from Defendant Dr. Haque for withdrawal medications, including Tylenol, Vistaril, Phenergan, Bentyl and Loperamide, for Mr. Lopez Rosario which apparently had been administered to Mr. Rosario Lopez earlier that same evening at about 6:30 PM.

75.     According to medical records, later that same evening, at 9:10 PM and 9:12 PM, Defendant Dr. Haque entered electronic progress notes to the effect that Mr. Rosario had self-reported asthma and withdrawal symptoms, that he had a medical history of "asthma (inactive), Opiate abuse/Heroin, fentanyl; Benzo use/Xanax; 7/22/2021 ASTHMA; FENTANYL USE," that he was opioid dependent, and that he had been started on asthma and withdrawal mediations.

Case ID: 230701473

76.     According to medical records, Defendant Dr. Haque did not prescribe clonidine, an anti-hypertensive drug that lowers blood pressure and heart rate, or suboxone, which is one of the main medications used to treat opioid addiction, due to an alleged "hx [history] of Suboxone Diversion: Contraindication."

77.     Upon information and belief, the medications that were prescribed and reportedly given to Mr. Rosario Lopez to treat his withdrawal symptoms were inadequate and ineffective.

78.     Upon information and belief, since approximately August 2018, Defendants City of Philadelphia, PDP and/or Corizon Health have made suboxone medication routinely and readily available to treat detainees and inmates suffering from opioid addiction and withdrawal housed in the PDP, including CFCF.

79.     Upon information and belief, Defendants City of Philadelphia, PDP and/or Corizon Health had established policies and protocols in place to safely administer under medical supervision daily doses of suboxone to inmates suffering from withdrawal within the PDP, including CFCF.

80.     Upon information and belief, Defendant Dr. Haque's reasons for failing to prescribe suboxone to treat Mr. Rosario Lopez's withdrawal symptoms were medically unfounded and unjustified under the circumstances.

81.     Upon information and belief, Defendant Dr. Haque's refusal to provide suboxone medication deprived Mr. Rosario Lopez of life-saving medication to treat his urgent and withdrawal condition.

82.     Despite the need for regular monitoring of his serious medical condition, Mr. Rosario Lopez was not re-evaluated by medical staff until approximately 8 AM, on July 23, 2021, approximately thirteen and a half (13 ½) hours after his first assessment for withdrawal symptoms.

19

Case ID: 230701473

83.     According to medical records, on July 23, 2021, at 9:03 AM, Defendant Nurse McGettigan entered an electronic progress note that indicated Mr. Rosario Lopez's vital signs were taken at 8 AM which showed an elevated respiratory rate of 24 breaths per minute. The note also indicated that a COWS assessment was performed which showed that Mr. Lopez Rosario was continuing to suffer from moderate withdrawal symptoms, including elevated heart rate, restlessness, bone or joint aches, vomiting or diarrhea, anxiety and irritability and gooseflesh skin. Mr. Rosario Lopez was instructed to contact medical staff if new symptoms developed or current symptoms worsened, and his medical monitoring was continued.  Upon information and belief, no new or different mediations were ordered.

84.     Over the course of the next several hours, Mr. Rosario Lopez's medical condition progressively worsened, and he began experiencing and exhibiting severe withdrawal symptoms, which were ignored, and needed emergency medical attention, which was not provided by Defendants.

85.     Upon information and belief, Defendants failed to properly, regularly and/or effectively monitor and observe Mr. Rosario Lopez's medical condition over the course of several hours on July 23, 2021 despite their obligation and many opportunities to do so as his withdrawal symptoms progressively worsened and his need for immediate medical attention became increasingly critical.

86.     Upon information and belief, Mr. Rosario Lopez's severe withdrawal symptoms and need for emergent care should have been readily apparent and obvious to any reasonably trained correctional officer or medical personnel working at CFCF, and responsible for the care and custody of detainees, especially those inmates who were under medical monitoring protocol.

Case ID: 230701473

87.     Upon information and belief, Defendant City of Philadelphia, PDP, Commissioner Carney, Warden Farrell and/or Warden Giannetta failed to ensure that holding cells in the receiving/intake unit of CFCF, including decedent's cell, had working alarm buttons—that is, buttons persons housed in a cell could press to alert officers to an emergency situation.

88.     Upon information and belief, to the extent that cells did have working alarm buttons in cells, Defendants City of Philadelphia, PDP, Commissioner Carney, Warden Farrell and/or Warden Giannetta failed to ensure that correctional supervisors and officers, including Defendants Lt. Marshall, Sgt. Jay, C/O Poole and/or Supervisor/Correction Officer John Does, were properly trained and advised of their duties and responsibilities to promptly react and respond to inmate alerts from the pressing of such buttons.

89.     Upon information and belief, to the extent that Mr. Rosario Lopez and/or other cellmates pressed the alarm button in the cell,  Defendants Lt. Marshall, Sgt. Jay, C/O Poole and/or Supervisor/Correction Officer John Does, failed to promptly respond to the alarm which should have alerted them to Mr. Rosario Lopez's medical emergency.

90.     Upon information and belief, Defendants City of Philadelphia, PDP, Commissioner Carney, Warden Farrell and/or Warden Giannetta failed to ensure that its correction officers conducted regular tours and safety checks of the receiving unit to assess the health and safety of persons housed in that unit.

91.     Upon information and belief, Defendants City of Philadelphia, PDP, Commissioner Carney, Warden Farrell and/or Warden Giannetta were aware that Mr. Rosario Lopez was assigned to a cell block at CFCF that was chronically and severely understaffed, and further understood that such understaffing practices created an unsafe jail environment and would greatly increase the likelihood that pretrial detainees' serious medical needs would go undetected and untreated.

21

Case ID: 230701473

92.     As a result, it is believed and therefore averred that Defendants left Mr. Rosario Lopez for several hours in his cell suffering from a medical emergency without providing necessary and appropriate emergency medical intervention.

93.     On July 23, 2021, at about 5:00 PM, despite the need for regular monitoring of his serious medical condition and approximately nine (9) hours after his last documented interaction with any medical staff, Mr. Rosario Lopez was found unresponsive in his cell by unknown correction officers or other persons.

94.     It was obvious at that time that Mr. Rosario Lopez was suffering from a serious medical condition and that he needed emergency medical treatment.

95.     The medical response to the medical emergency involving Mr. Rosario Lopez was directed and/or supervised by Defendant Corizon Health and Dr. Haque.

96.     According to medical records, Mr. Rosario Lopez was brought to the receiving room where Defendants Nurse Raines, Nurse DeRose, Nurse Marinho, and Nurse Dennis responded to the medical emergency, and found Mr. Rosario Lopez unresponsive, lethargic, weak, slumping, cold to the touch, hypoxic and cyanotic.

97.     According to medical records, Mr. Lopez Rosario was taken by portable stretcher to the medical triage area where he was given two doses of Narcan nasal spray, which is medication used for emergency treatment of an opioid overdose, and was also given oxygen to treat his hypoxia. Mr. Rosario Lopez remained unresponsive after the first dose of Narcan nasal spray.

98.     According to medical records, Mr. Rosario Lopez remained disoriented and confused even after the second dose of Narcan nasal spray, but was able to communicate in Spanish through an interpreter that he was suffering severe withdrawal from opioid use on the day of his arrest.

Case ID: 230701473

99.     At about 5:45 PM, Defendant Nurse Marinho or other nursing staff notified Dr. Haque of Mr. Rosario Lopez's serious medical condition, and only at that time did Dr. Haque order that Mr. Rosario Lopez be sent out to the ER for further evaluation and treatment.

100.    Upon information and belief, Defendant Dr. Haque never saw or examined Mr. Rosario Lopez during the entire time he was at CFCF under medical monitoring.

101.    While understanding the severity of the situation, Defendants Dr. Haque, Nurse Raines, Nurse DeRose, Nurse Marinho and/or Nurse Dennis failed to ensure immediate medical intervention for Mr. Rosario Lopez.

102.    At approximately 6 PM, EMS personnel arrived at CFCF.

103.    At approximately 6:15 PM, EMS transported Mr. Rosario Lopez to Nazareth Hospital for emergency medical care.

104.    On arrival at the Emergency Department, Mr. Rosario Lopez was apneic with an altered mental status and severely tachycardic. He went into respiratory distress and was intubated. Soon after he was intubated, he suffered cardiac arrest. He was then transferred to the ICU where he coded several more times after going pulseless, but was revived each time. Mr. Rosario Lopez remained comatose and ventilator dependent post cardiac arrest during the entire time he was at the hospital.

105.    Despite emergency medical intervention, Mr. Rosario Lopez's condition rapidly worsened while at the hospital, and neurological examinations and testing showed that he was brain dead.

106.    Mr. Rosario Lopez was pronounced dead on July 27, 2021, at 11:19 AM.

107.    An autopsy was subsequently conducted and concluded that Mr. Rosario Lopez' death was caused by "complications from drug intoxication."

Case ID: 230701473

108.    Mr. Rosario Lopez's death could and would have been prevented had there been earlier intervention and appropriate medical monitoring and care to address his serious medical consequences after he was admitted to CFCF in the early morning hours of July 22, 2021.

109.    The delay in medical intervention for Mr. Rosario Lopez was a direct and proximate result of the actions and inactions, with deliberate indifference, of Defendants.

110.    The delay in providing appropriate care increased the risk to Mr. Rosario Lopez's safety and increased the severity of his medical situation.

111.    The conduct of Defendants, acting under color of state law, was recklessly and deliberately indifferent to the safety, bodily integrity, well-being, health and life of decedent and was committed in conscious disregard of the substantial and/or unjustifiable risk of causing harm to decedent.

112.    The failures of the Defendants to act in such a way as to ensure appropriate intervention for Mr. Rosario Lopez were due to the failure of Defendants City of Philadelphia and Corizon Health, with deliberate indifference, to establish appropriate policies, practices, procedures, and training regarding the monitoring, supervision and protection of persons admitted to PDP facilities, including CFCF, with substance abuse issues.

113.    At all relevant times, Defendants were aware of Mr. Rosario Lopez's serious medical needs and failed, with deliberate indifference, to ensure that Mr. Rosario Lopez received appropriate medicines to treat his opioid withdrawal and timely evaluation, care and treatment.

114.    At all times relevant hereto, Defendants, with deliberate indifference, failed to develop and implement or modify existing policies, practices and procedures to ensure that detainees at CFCF received adequate medical care and monitoring for serious illnesses and conditions, medications, referrals to doctors or outside medical care.

Case ID: 230701473

115.    At all times relevant hereto, Defendants, with deliberate indifference, failed to train, supervise and/or discipline staff at CFCF as to the need to closely monitor people under their care or custody presenting with signs of potential overdose to ensure that detainees suffering from drug withdrawal received proper and timely medical care.

116.    At all times relevant hereto, Defendants, with deliberate indifference, failed to properly staff CFCF with a sufficient number of correctional officers and medical personnel to ensure that detainees suffering from opioid withdrawal were closely monitored and received proper and timely medical care.

117.    Upon information and belief, Mr. Rosario Lopez's report of his withdrawal, along with the Defendants' knowledge of his medical history and symptoms, provided more than adequate time and opportunity for the Defendants to properly monitor and treat decedent's condition.

118.    Upon information and belief, despite Mr. Rosario Lopez's report that he was suffering from withdrawal, along with his medical history and symptoms, Defendants failed to regularly or adequately monitor decedent, provide appropriate medical treatment or withdrawal medications, and/or timely transport him for outside medical services.

119.    In the alternative, Defendants made intentional decisions with regard to Mr. Rosario Lopez's medical care which placed Mr. Rosario Lopez at substantial risk of suffering serious harm and death. Defendants did not take reasonable available measures to abate that risk, even though a reasonable correctional officer and/or medical provider in the circumstances would have appreciated the high degree of risk involved, thereby making the consequences of the Defendants' conduct obvious.

Case ID: 230701473

120.   At all times relevant hereto, the conduct of all Defendants was in willful, reckless, and callous disregard of decedent's rights under federal and state law.

121.   As a result of the Defendants' deliberate indifference and adherence to constitutionally inadequate policies and procedures set forth herein, decedent's withdrawal condition, which was treatable, was substantially aggravated leading to his death.

122.   Decedent's death was a direct and proximate result of the Defendants' failure to provide appropriate and adequate medical care, medical monitoring and withdrawal medications despite decedent's obvious withdrawal symptoms, along with his reports of withdrawal, and adherence to known inadequate policies and procedures and training set forth herein.

123.   As a direct and proximate result of the conduct of all Defendants, Mr. Rosario Lopez experienced enormous and prolonged conscious physical and emotional pain and suffering.

124.   As a direct and proximate result of the conduct of all Defendants, Mr. Rosario Lopez was caused to lose the enjoyment of his life and was also caused to suffer complete loss of earnings and earning capacity.

**B.    Philadelphia County's Pattern and Practice of Violating Constitutional Rights of Pretrial Detainees.**

125.   For several years, the City of Philadelphia has displayed a consistent and systemic failure to maintain proper staffing practices at its city jails, including CFCF, resulting in significant and dangerous understaffing leading to unsafe and deplorable conditions, denied of medical care and an increase in inmate deaths, including several preventable inmate deaths from drug overdoses, directly related to the lack of appropriate supervision and/or medical care.

126.   As detailed below, Defendants City of Philadelphia, PDP, Commissioner Carney and Warden Farrell and/or Warden Giannetta have long been aware of the dangers created by their failure to maintain proper staffing levels in PDP facilities, including CFCF.

Case ID: 230701473

127.   Not only did the City of Philadelphia, PDP, Commissioner Carney and Warden Farrell and/or Warden Giannetta tolerate the escalating danger to detainees caused by the lack of adequate staffing in the PDP, including CFCF, Commissioner Carney went so far as to blame the issue on the general staffing shortages caused by the COVID-19, despite the fact that there was evidence that a staffing crisis had pre-existed in PDP well before the pandemic.

128.   As reported in the Philadelphia Inquirer on March 20, 2018, significant staffing shortages preexisted the pandemic and led to frequent lockdowns at the city jail facilities, including CFCF, which the correction officers' union blamed on mismanagement and insufficient hiring.[1]

1.   **PDP's Established Practice of Understaffing its Jail Facilities**

129.   According to the Philadelphia Office of the Controller, from 2019 to April of 2021 the PDP saw staff vacancies triple and conditions within the facilities become increasingly unsafe.[2]

130.   City Controller Rebecca Rhynhart expressed grave concern with staffing, stating:

"The Department of Prisons is at a tipping point. Inadequate staffing levels have led to unsafe conditions for workers and confinement of inmates, many of whom are pre-trial, to their cells – sometimes for 20 or more hours a day... The City is responsible for the Department of Prisons' more than 1,500 correctional officers and approximately 4,600 inmates. We have a duty to provide safe working conditions and humane living conditions. The City must take an all-hands-on-deck approach to reach this hiring goal, with rigorous recruitment and multiple classes."[3]

131.   This assessment was based data provided by PDP which showed that from 2019 – 2021, correctional staffing declined by 440 officers and only 119 new officers were hired within

---

[1]   https://www.inquirer.com/philly/news/pennsylvania/philadelphia/philly-jails-are-downsizing-so-why-did-overtime-top-26m-20180320.html
[2]   https://controller.phila.gov/controller-rhynhart-calls-for-staffing-increase-at-philadelphia-prisons-department-to-improve-safety-for-correctional-officers-and-inmates/
[3]   Id.

Case ID: 230701473

that same period. At the time of the statement, Rhynhart indicated that more than 300 Correction

Officers were needed to meet adequate staffing.[4]

132.    The City of Philadelphia acknowledged the danger that the staffing shortages

created, pointing to the five inmate-on-inmate homicides in PDP facilities from August 2020 –

May 2021. A total that exceeded the prior eight years combined.[5]

133.    The Philadelphia Inquirer, frequently reported on the failures of the PDP, including

an April 23, 2021 article that stated that there were shifts where as many as 14 of the 15 workers

abandoned their shifts.[6]

134.    On May 19, 2021, the Inquirer reported that 64% of staff called out on Mother's

Day weekend.[7]

135.    Commissioner Carney acknowledged that PDP "are severely impacted by excessive

callouts" and that PDP was short 333 staff positions.[8]

136.    This number continued to grow, and in June 2021 it was then reported that PDP was

short 382 officers needed to operate safely.[9] By August 26, 2021 the gap had grown to 483 officers.

137.    In an August 26, 2021 report, the Pennsylvania Prison Society executive Director

Claire Shubik-Richards stated: "we have been warning the city for months that the prison is

dangerous, unconstitutional in its conditions, and past the boiling point."[10]

---

[4] *Id.*
[5] *Id.*
[6] https://www.inquirer.com/news/philadelphia-jail-murder-christopher-hinkle-armani-faison-20210423.html
[7] https://www.inquirer.com/news/philadelphia-department-prisons-lockdown-bail-fund-20210519.html
[8] *Id.*
[9] https://www.inquirer.com/news/philadelphia-prison-riot-cfcf-assault-20210826.html
[10] *Id.*

Case ID: 230701473

138.    Correctional officers, including lieutenants, captains, and veterans of more than 20 years, told the Inquirer in October 2021 that the conditions in PDP facilities are the "worst they have ever seen."[11]

139.    It was then reported that the number of staff needed to operate safely had grown to 500.[12]

140.    Highlighting the danger in the Philadelphia Prisons is the fact that the PDP inmate population fell by 2% since 2019, yet over that same period seen staffing levels dropped by 28%.[13]

141.    On November 4, 2021, an analysis of PDP staffing rosters found that 20-30% of shifts on a given day were filled by officers and supervisors working overtime, and more than 40% of shifts listed were not filled at all.[14]

142.    David Robinson, the president of the correctional officers' union, Local 159 of AFSCME District Council 33, stated that: "Now we're in a situation where we don't have staff. That makes the prisons dangerous…they had an obligation to keep these jails safe. And I'm going to be honest: I believe they failed."[15]

143.    By the November report, the City Controllers office claimed a 28% vacancy rate within PDP. [16]

144.    Commissioner Carney suggested then and has since continued to suggest that the COVID-19 pandemic is to blame, however at the same time the Pennsylvania Department of Corrections reported only a 5.6% vacancy rate.[17]

---

[11] https://www.inquirer.com/opinion/commentary/philadelphia-prisons-correctional-officer-shortage-20211006.html#loaded
[12] *Id.*
[13] *Id.*
[14] https://www.inquirer.com/news/philadelphia-jails-staffing-shortage-assault-20211104.html
[15] *Id.*
[16] *Id.*
[17] *Id.*

Case ID: 230701473

**2.** **Inmate Deaths From Opiates Use Or Withdrawal**

145.    In Philadelphia, every neighborhood has been hit hard by the substance use and opioid epidemic.

146.    In 2020, there were reported 1,214 drug overdose fatalities, 86% of which involved opioids such as heroin, oxycodone and fentanyl.[18]

147.    It is no surprise that the death toll of Philadelphia's opioid crisis made its way into city jails, and Commissioner Carney acknowledged that the number of inmate deaths from drug overdose in the PDP began to rise at an alarming rate.

148.    Specifically, as reported, Commissioner Carney acknowledged the PDP began to see an increase in drug overdose deaths among people in custody as early as 2018, and further emphasized the gravity of the situation pointing out instances [in 2018] where three people died within the first 24 hours of being in custody, and four people died in a single eight-day period, and was quoted as stating:  "We saw such an increase in our clinical opioid withdrawals that we said we have to offer people options. One of those options is medication-assisted treatment."[19]

149.    It was also reported that since 2018 (to approximately December 2022), there have been at least 20 inmate deaths related to drug intoxication in Philadelphia jails.[20]

150.    About 70% of the people who enter the Philadelphia jails have a substance use disorder, and many are addicted to opioids, which require treatment for symptoms of drug withdrawal.[21]

---

[18] https://www.phila.gov/2021-12-02-health-department-releases-update-on-2021-overdose-death-counts/
[19] https://www.audacy.com/kywnewsradio/news/local/opioid-overdose-deaths-increase-philadelphia-jail
[20] *Id.*
[21] *Id.*

Case ID: 230701473

151.   In this regard, it has been recognized that the suboxone program administered by the PDP to inmates is instrumental in not only halting the opioid withdrawal process, but also in decreasing the risk of overdose. According to Dr. Bruce Herdman, chief of medical operations at the city's department of prisons: "About 90% of them [inmates] are asked to be in a suboxone program [which treats opioid use disorder], and they're medicated right away. And then they're medicated all the way through their stay."[22]

152.   As reported in the Inquirer on March 4, 2020, four people had overdosed from fentanyl at CFCF over a weekend, including three fatalities, bringing the number of fatal drug overdoses within city jails to 10 in three years. [23]

153.   As further reported by the Inquirer in an article on April 19, 2022, a total of at least 29 people have died while in custody of the Philadelphia jails, including CFCF, since the start of the pandemic [in March 2020], including three by suicide, five by homicide, and 10 by drug overdose, and that at least two of the inmate deaths, no staff were present.[24]

154.   The inmate fatalities have been attributed to a dangerously short-staffed department. The deficit has climbed to 644 officers — 36% short of a full complement — exacerbated by absenteeism, averaging 20% of staff per shift, but sometimes topping 90%. Over the last year, twice as many officers left as were hired.[25]

155.   An Inquirer article on July 30, 2021, which focused on short-staffing in relation to the attempted suicide of one inmate and death of two other inmates in one week in July 2021,

---

[22] *Id.*
[23]   https://www.inquirer.com/news/philadelphia-prison-drug-overdose-fentanyl-heroin-deaths-20200304.html#:~:text=The%20deaths%20bring%20the%20number,nine%20people%20in%20three%20years.&text=Four%20prisoners%20overdosed%20in%20Philadelphia's,have%20died%2C%20officials%20said%20Wednesday.
[24]   https://www.inquirer.com/news/philadelphia-jail-conditions-prison-department-staffing-20220419.html?query=inmate%20deaths%20drug%20overdose%20Philadelphia%20department%20of%20prisons
[25] *Id.*

Case ID: 230701473

including the drug overdose death of Mr. Rosario Lopez, David Robinson, President of Local 159 of AFSCME District Council 33, which represents correctional officers, stated:

> "Officers are scared for their lives. Inmates are scared for their lives ... they [prison administrators] keep saying people aren't coming to work, but they aren't giving the reason why: It's unsafe. It's totally unsafe inside."[26]

156.   In an article in Juris Magazine on November 15, 2021, the Pennsylvania Prison Society's Noah Barth, who had personally inspected Philadelphia jail facilities and spoke with inmates about prison conditions emphasized inadequate staffing to respond to medical emergencies, especially on weekends and evenings:

> "People we spoke to across all the facilities talked about a lack of staffing on the weekends and evenings, which results in people not being let out of cells and not having anyone to respond if there is an emergency. We have received at least half a dozen reports if not more of people having medical emergencies that are not being responded to by staff .... [27]

### 3.   Remick v. City of Philadelphia

157.   In April of 2020, ten incarcerated individuals within various facilities operated by the Philadelphia Department of Prisons filed a civil rights class action lawsuit against the City of Philadelphia and Prison Commissioner Blanche Carney over the conditions of the prisons and treatment of inmates by staff.

158.   Understaffing within the Department of Prisons was identified in that litigation as the root cause of most of the constitutional violations claimed.

159.   Judge Schiller ordered the City and Commissioner Carney, through a partial settlement agreement dated June 3, 2020 to rectify certain failures including providing regular staff to maintain safe and optimal operations for inmates.

---

[26] https://www.inquirer.com/news/philadelphia-jail-deaths-short-staffing-20210730.html
[27] https://sites.law.duq.edu/juris/2021/11/15/a-humanitarian-crisis-in-philadelphia-prisons/

Case ID: 230701473

160.    Throughout the entirety of the case, there were frequent status reports regarding Defendant's compliance.

161.    A report dated September 24, 2020 concluded "according to an initial review of the staffing reports produced by Defendants, CFCF appears to have the greatest issue with staffing shortages, with many months reporting a shortage of over 100 staff. Of the five facilities, the housing units at CFCF report the most pervasive incidents of non-compliance with the Order." (9/24/2020 Report at pp. 3, 7-10).

162.    The report noted that due to staffing shortages there would be times when "no CO enters a unit for upwards of two hours at a time, leading to delayed response to fights or medical emergencies." (*Id.* at p. 3; fn 2).

163.    Within that same filing, Defendants acknowledged that "staff non-attendance has been an issue." (*Id.* at pp. 7, 11).

164.    On October 7, 2020, both parties convened for a joint status report where it was noted that the City and Commissioner admitted their failure to comply with the Court Order, citing staff shortages. (10/7/2020 Report at p. 2).

165.    Defendants acknowledged that at CFCF in particular, units would often face severe staff shortages for several days in a row which led to further the continued failure to comply with the order. (3/4/2021 Report at pp. 2, 7-8).

166.    A March 19, 2021 joint status report again pointed out insufficient staffing as the primary reason reported by both inmates and PDP administrators for the City's failures to provide for inmate needs. (3/19/21 Report at p. 1).

167.    Defendants cited "strenuous staff shortages" as the reason for their failure to allow inmates adequate out-of-cell time as required by the order. (*Id.* at pp. 2, 7-8).

Case ID: 230701473

168.    This status report also made clear that despite the City of Philadelphia, PDP, and Commissioner Carney all blaming general staff shortages on the COVID-19 pandemic that "these issues are limited to the security staff," and that other areas, such as medical staff, are not calling out or failing to show to their shifts in the way that COs are. (*Id.* at pp. 3-4).

169.    Within the April 8, 2021 report, it was made clear that the City, Commissioner Carney and the Wardens alike were aware that insufficient staffing would reasonably result in dangerous conditions, and that the failures had grown so severe that "there is no realistic prospect for the hiring of addition[al] correctional officers that will remedy these issues in the near-term. The price for this failure is being borne by incarcerated persons." (4/8/2021 Report at pp. 3, 17-18).

170.    Staffing issues continued to become more severe, being labelled a "staffing crisis" by PDP in the August 19, 2021 status report.

171.    Soon after, a September 2, 2021 status report again outlined the staffing crisis.

172.    It was found then through data provided to the Court that the PDP staffing crisis was "caused not only by high rates of staff absenteeism, but also by the City's failure to have sufficient numbers of corrections officers to properly staff PDP facilities," with no "realistic plan for closing the gap in terms of correctional staffing." (9/2/2021 Report at p. 2).

173.    The PDP and the City continued to fall short of addressing their long-standing inadequate staffing, despite the repeated notices and prolonged dangers. (*Id.* at p. 2).

174.    In January 2022, for the second time in seven months, the City of Philadelphia agreed to pay $125,000 into community bail funds to avoid contempt findings and resolve violations of Court Orders requiring a minimum of 3 hours of daily out-of-cell time for people

Case ID: 230701473

incarcerated in the PDP. The City of Philadelphia's first $125,000 payment was made to the Philadelphia Bail Fund in late June 2021.

175.    In April 2022, the City of Philadelphia entered to a settlement agreement in which it agreed, among other things to address severe staff shortages, significant medical care backlog, prolonged and restrictive lockdowns, and heightened violence at the Philadelphia jails, and also agreed to the appointment of an independent monitor.

**4.    Inmate Statements**

176.    Below are just a few examples of inmates at CFCF who provided declarations on their first-hand experiences of staffing deficiencies within the jail as part of the *Remick* litigation between September 2020 and October 2021.

177.    Across the board, detainees and inmates reported significant lack of staff resulting in the deprivation of their out-of-cell time, medication, mail, and proper supervision.

178.    In his Declaration of September 18, 2020, Dan Doyle, a detainee at CFCF, stated:

> Around 3 weeks ago, a man on my unit was beaten up by his cellmate in the middle of the night. He pressed his emergency call button, but no one responded. It took about an hour and 45 minutes for staff to respond. The man ended up having to be taken to the hospital.

179.    In his Declaration of September 28, 2020, Jacquar J. Stokes, an inmate at CFCF, said in his declaration that he had experienced the negative impacts of CFCF's understaffing.

180.    Mr. Stokes stated that "insufficient staffing is a big impediment to our wellbeing. We are kept in our cells for days at a time and told this is because there are not enough COs on duty," noting that on the weekends "none" of the regular CO's report to their shifts.

181.    Another inmate at CFCF, Daniel Marshall, stated that on August 19, 21, 22, 24, and 26, 2020, inmates were not let out of their cells at all, with the only explanation on August 21st being that "not enough guards were present at the facility."

35

Case ID: 230701473

182.    Sean Nichols, another inmate at CFCF, stated: "we are still locked in our cells for days at a time. I did not come out of my cell at all from Friday, February 19 to Monday, February 22, 2021," that and was "locked in my cell throughout the previous weekend as well," and that "weekends are especially bad because, as staff tell us, there are frequent staff shortages."

183.    Kareem Sprual, another CFCF inmate, claimed in his February 23, 2021 declaration that "staff tells us that there are not enough correctional officers to have rovers on each unit." Rovers are staff members that move between units as additional assistance and support. He went on: "Sometimes, staff shortages have resulted in us receiving no out-of-cell time at all."

184.    Khalil Brown, another CFCF inmate, stated in his Declaration of March 30, 2021 that "I often go days in a row without being permitted to leave my cell" due to short-staffing.

185.    In his Declaration, another CFCF inmate Caez Robinson, described his experiences in June 2021 during intake at CFCF while he was going through withdrawal:

> I entered jail in June 2021. I spent three days in the intake receiving room sleeping on the floor in a tiny, crowded room with eight people. I did not sleep at all. People slept on the bench, under the bench, and just on the floor. We were all cramped in a tiny room. I had no idea if other people had COVID, and it felt very unhygienic. I was going through withdrawal at the time, and I was throwing up. I was given 3 cold packs a day, which consisted of two pieces of bread, one piece of meat, and mustard. That was not nearly enough to survive on and we were all starving.

186.    Mr. Robison also stated on August 4, 2021, he was stabbed by his cellmate during a fight, and a guard who walked up to the cell failed to immediately intervene, but instead left the scene and returned about five minutes later after the fight had already ended with six or seven guards. He added: "sometimes there will ne no guard visible all night, and I never see anyone doing tours of the block" "There is an emergency button in my cell that can be pressed, but it is useless" because no one responds to it. "Knowing that nobody is ever going to check on me if there is an emergency is scary. It feels like no one is looking out for us here."

Case ID: 230701473

187.    Another CFCF inmate John Hart further corroborated the lack of CO staffing, stating in his Declaration of August 30, 2021 that "there are no officers on the block at all during the 3 pm – 11 pm and 11 pm – 7 am shifts" and that "staff shortages have also been affecting other necessary jail functions, including distribution of medication …."

188.    Another CFCF inmate Donovan Forth described how he was not getting prescribed eye medication on a regular basis to treat serious his medical issues, i.e., eye surgeries, including a corneal implant, after he arrived at CFCF in January 2021, resulting his corneal transplant being rejected, lost vision in his right eye, permanent damage to his vision and development of glaucoma.

189.    In his Declaration of October 22, 2021, another CFCF inmate Qaasim Berry stated that: "I am regularly locked in my cell 24 hours a day for weeks straight without showers or phone calls," including "42 days without being able to take a shower," due to staffing issues; conditions which have "seriously affected my mental health" causing "several breakdowns."

5.    **Jail Riots and Grand Jury Investigation**

190.    Less than two weeks before decedent's arrival at CFCF, inmates at other PDP facilities erupted in mass violence, further highlighting the safety and security risks inherent in chronic and severe understaffing.

191.    On July 4, 2021, a riot reportedly occurred at Riverside Correctional Facility ("RCF"), in which inmates had flooded a unit, with feces all over the unit due to flooding of sinks and toilets, several inmates broke out cell windows.

192.    On August 20, 2021, inmates broke out of their cells, set fires, and pelted guards with an "unknown liquid" at Philadelphia Industrial Correctional Center ("PICC"). Inmates reportedly breached their cell doors causing damage to the facility breaking video surveillance

Case ID: 230701473

cameras, electronic unit consoles, they broke plumbing pipes, water fountains dispersing fire extinguishers and barricading themselves inside the unit.

193.    It was reported that the "mass disturbance" that occurred at RCF and/or PICC prompted the Philadelphia District Attorney's Office ("DAO") to convene a grand jury investigation into the PDP.[28]

194.    Two more riots occurred at PICC over the course of three days from October 11 - 13, 2021. In those incidents, it was reported that around 90 prisoners broke out of their cells, started fires and floods, armed themselves with sticks and improvised swords made from plastic container lids, hurling feces at guards as the prisoners took over a housing unit and barricaded themselves inside.[29]

### 6.    Lieutenant Sholonda Gregory Whistleblower Letter

195.    In a whistleblower letter dated October 5, 2021, Lieutenant Sholonda Gregory, a 23 year veteran of the PDP, wrote to Mayor Kenney and Judge Schiller,  describing and corroborating, prior inmate accounts of deplorable and inhuman conditions of confinement, violations of inmates' human and constitutional rights and civil liberties, safety hazards, mismanagement and cover-ups, as well as the abject failure or refusal of prison officials to address the issues, which she described as "narcistic leadership," including Commissioner Carney.

196.    Among other things, in her letter, Lt. Gregory described tactics that prison management used to cover up the deficiencies in staffing in official documentation, including

---

[28]  https://www.inquirer.com/news/philadelphia-prisons-grand-jury-investigation-riot-disturbance-20210920.html#:~:text=A%20Philadelphia%20grand%20jury%20is,rights%20and%20public%2Dsafety%20crisis.
[29]  https://www.inquirer.com/news/philadelphia-jail-prison-riot-disturbance-picc-20211015.html#:~:text=Philadelphia-,'Unit%20unsafe%3A%20Inside%20a%20week%20of%20riots%2C%20fires,staff%20and%20union%20officials%20said.

Case ID: 230701473

directing officers to falsify staffing rosters and logs to make it appear as if the facilities were fully staffed, when they were not.[30]

**7.    Specific Inmate Emergencies and Violence Ignored Due to Insufficient Staff**

**(a)    Frankie Diaz**

197.    On August 18, 2020, Frankie Diaz, a pretrial detainee at the Detention Center in Philadelphia, was beaten to death by another inmate in a shower area of the jail that was unguarded.

**(b)    Dale Curbeam**

198.    On January 15, 2021, 60-year-old Dale Curbeam was found face down in his cell at CFCF.

199.    Curbeam was pronounced dead just a few minutes after being discovered. The cause of death was ruled a homicide by blunt impact head trauma. Curbeam's cellmate was arrested in connection with the murder.

200.    According to a report by the Inquirer, only one staffer was assigned when Curbeam was murdered.[31]

**(c)    Rodney Hargrove**

201.    On March 18, 2021, after posting bail, Rodney Hargrove was loaded into a prison van at CFCF in the middle of the night, driven 100 feet and dropped off shortly after 1:00 a.m. at a desolate SEPTA bus stop knowing that the next bus would not come for over five hours.

202.    In a case of mistaken identification, Hargrove was ambushed by a dark-colored vehicle and tragically killed on prison grounds by a flurry of gun shots. Hargrove's killers were

---

[30]  https://www.inquirer.com/news/philadelphia-jail-conditions-prison-department-staffing-20220419.html?query=inmate%20deaths%20drug%20overdose%20Philadelphia%20department%20of%20prisons
[31]  https://www.inquirer.com/news/homicide-philadelphia-jails-violence-covid-pandemic-lockdowns-20210120.html

Case ID: 230701473

able to pursue and kill Hargrove on CFCF grounds because the parking gate that should have been closed was open and the guard who should have been in the booth operating the gate was not there

203.    The occupants of the vehicle shot and killed Hargrove in close range on prison grounds a few feet from where a guard should have been stationed in the parking lot of the CFCF.

204.    Within just 47 minutes of his release, 20-year-old Hargrove had been killed due to the city's nighttime release polices and lack of proper security staffing at CFCF. [32]

**(d)    Armani Faison**

205.    On March 27, 2021, Armani Faison, a pretrial detainee housed at CFCF who had been arrested for shoplifting, was repeatedly and brutally raped by his cellmate for hours as his screams for help and those of inmates housed nearby went unanswered.

206.    The rape only subsided when Armani was murdered. Armani's body was found the following morning naked, bloodied, and floating in six inches of water.

207.    According to a report by the Inquirer, the cell block was left unsupervised for three hours, and when Armani was found, he was naked and unresponsive on the floor of his cell, the entire pod was unattended, and a sprinkler was going off. [33]

208.    In the aftermath of Armani's death, a retired CFCF Warden John Delaney stated that leaving any unit unattended violates the most basic security protocols:

> "At no time should a housing area in any facility within the Philadelphia Department of Prisons be left unmanned for any extended period of time," he said. "This not only compromises the health and welfare of the inmates assigned to that area, but it also jeopardizes the safety and security of the facility and places staff in unnecessary risk."

---

[32]  https://www.inquirer.com/news/hargrove-shooting-prison-philadelphia-jails-lawsuit-20210915.html?query=rodney%20hargrove
[33]  https://www.inquirer.com/news/philadelphia-prisons-jail-armani-faison-homicide--20210330.html?query=inmate%20deaths%20overdose%20philly%20jails%20CFCF

Case ID: 230701473

209.     Claire Shubik-Richards, the Executive Director of the Pennsylvania Prison Society, said of Faison's death:

"This is not an aberration. These are not safe facilities. The assaults on staff and these homicides are the most acute symptom of a chronic problem that they're not safe facilities and they can't be safe facilities with the current staff-to-population ratio that they're having on a daily basis."

210.     David Robinson, President of the Correctional Officers' Union, Local 159 of AFSCME District Council 33, also lamented the lack of adequate staffing:

"The prisons are crying for help and nobody is listening. Staffing definitely has a role in a lot of things that are going on."

**(e)     Christopher Hinkle**

211.     Christopher Hinkle was arrested for a minor drug charge but was unable to pay his bond. He was sent to CFCF, where he was housed on the same cellblock as Mr. Faison.[34]

212.     On April 12, 2021, Mr. Hinkle was beaten by his cellmate in a brutal, prolonged attack.

213.     Hinkle sustained a broken neck among other blunt injuries.[35]

214.     Hours passed before Hinkle was discovered.

215.     The delay in discovering Hinkle rendered him unsavable. Once found, he was put on life support before he died.[36]

216.     Hinkle's cellmate reportedly admitted to the assault. The cellmate had a long record of random assaults and violent criminal offenses, most of which appeared unprovoked.[37]

217.     Hinkle was a non-violent offender.

---

[34] https://www.inquirer.com/news/philadelphia-jail-murder-christopher-hinkle-armani-faison-20210423.html
[35] https://6abc.com/philly-jail-death-christopher-hinkle-murder-inmate-killed/10669008/
[36] https://philadelphia.cbslocal.com/2021/05/21/christopher-hinkle-philadelphia-prison-death-rameel-wright/
[37] https://www.inquirer.com/news/philadelphia-jail-murder-christopher-hinkle-armani-faison-20210423.html

Case ID: 230701473

**(f)   Rashaan Chambers**

218.   In April of 2021, Rashaan Chambers was an inmate at CFCF. [38]

219.   On April 6, Chambers attempted to get medical care for his diabetes but was reportedly denied.[39]

220.   According to his mother, Chambers reported that no guards checked on him during the night nor did they complete morning checks.

221.   Feeling ill, Chambers did not go out of his cell for recreation time on April 7, but this did not alert staff to check on him. Staff reportedly did not seek care or check on Chambers until his family complained.

222.   Chambers was eventually taken to the hospital.

223.   On April 16, at 8:42 AM, Chambers was pronounced dead from complication of diabetic ketoacidosis.

224.   Despite there being a clear need for assistance, Chambers was ignored until his condition was too severe to survive.

**(g)   Christi Buoncristiano**

225.   On July 22, 2021, Christi Buoncristiano died after falling from the second tier at the Detention Center.   Her death was ruled a suicide.

**(h)   Eli Rosa**

226.   In a 2021 letter, Eli Rosa described the lack of correctional officers at CFCF where he was an inmate.

---

[38]  https://www.inquirer.com/news/philadelphia-department-prisons-lockdown-bail-fund-20210519.html
[39]  https://nwlocalpaper.com/injustice-is-blind

Case ID: 230701473

227.    Rosa wrote: "I've done had seizures, fights and fell off my bunk, and no C/O was around to help me get medical attention."[40]

(i)    **Quincy Day-Harris**

228.    On August 25, 2021 at the Detention Center, operated by PDP, 25-year old inmate Quincy Day-Harris died by suicide.[41]

229.    According to his family, Day-Harris suffered from paranoid schizophrenia which was well documented through previous times when the jail had admitted him to the hospital for psychiatric purposes.

230.    Day-Harris's family feels that the jail did not provide adequate oversight despite knowing that Day-Harris had documented mental health needs, resulting in his death.

(j)    **Mark Subher**

231.    On September 21, 2021, Mark Subher was attacked and seriously injured while a detainee awaiting trial at CFCF.

232.    Surveillance video from CFCF showed Subher was stabbed in a unit where no staff were present to respond.

233.    After a correctional officer had unlocked all the doors on the unit, she left.  Three other inmates then attacked Subher, one stabbing him repeatedly with a homemade knife, others punching and stomping him. After Subher got away, they had time to conceal the evidence, mopping up the trail of blood.

---

[40] https://www.inquirer.com/news/philadelphia-jail-murder-christopher-hinkle-armani-faison-20210423.html
[41] https://www.inquirer.com/news/philadelphia-prison-riot-cfcf-assault-20210826.html

Case ID: 230701473

234.   According to an Inquirer report, it took about an hour and a half before help finally arrived.[42]

### (k)   Unknown Inmate # 1

235.   Norman Cooper, an inmate in CFCF's custody, reported that in 2020 an unknown inmate on his cell block committed suicide.[43]

236.   It is alleged that due to insufficient staffing leading to guards not checking on cells, the unknown inmate was left hanging for several hours.

237.   According to Cooper, the cellmate of the unknown inmate was banging on their cell for hours trying to summon help. The calls went unanswered.

### (l)   Unknown Inmate # 2

238.   On July 25, 2021, an inmate was hospitalized after he attempted to hang himself on an intake block at CFCF where internal logs indicated that no tours or checks were made for more than 2 hours before staff attempted to revive him.[44]  This attempted suicide occurred only 2 days after Mr. Rosario Lopez was found unresponsive in his cell in the same intake/receiving area of CFCF.

### (m)   Lucian Martin

239.   Lucian Martin, who was incarcerated at CFCF for 4 months during the pandemic, and shared his personal experiences of deplorable conditions of confinement in an article published in the Inquirer on December 2, 2021.[45]

---

[42]  https://www.inquirer.com/news/philadelphia-jail-conditions-prison-department-staffing-20220419.html?query=inmate%20deaths%20overdose%20Philadelphia%20department%20of%20prisons
[43]  https://www.inquirer.com/news/philadelphia-jail-conditions-cfcf-prisons-emergency-20211116.html
[44]  https://www.inquirer.com/news/philadelphia-jail-deaths-short-staffing-20210730.html
[45]  https://www.inquirer.com/opinion/commentary/philly-jails-conditions-20211202.html

Case ID: 230701473

240.   Martin described first-hand accounts of being held in an overcrowded CFCF intake cell with 12 other people for two days upon arriving at the jail.

241.   His four-month stay included weeks in which he and other prisoners in his housing block were often confined to their cells 24 hours a day for multiple days at a time, and, and at one point, being confined in his cell for 120 hours straight.

242.   Martin also discussed a severe lack of access to appropriate and timely medical treatment.

243.   For example, Martin described how his cellmate suffered a seizure, but due to a lack of officers on the block, medical staff did not reach the man for over 45 minutes.

244.   Martin described how another inmate on his block had a seizure overnight, and despite his cellmate banging on the door and pleading for help for him, no guards showed up until the next morning, at which point the man had apparently died.  He was one of the 29 fatalities that occurred in the Philadelphia jails.

245.   The physical and mental anguish, pain and suffering, and eventual death, suffered by decedent in July 2021 resulted from and was a part of a persistent and widespread pattern of the City of Philadelphia and the PDP disregarding constitutionally mandated rights of detainees, including appropriate supervision, medical care and monitoring needs of detainees and other inmates with serious illnesses and conditions, including the need to hire, retain and maintain sufficient staffing levels of adequately and well trained correctional officers and medical personnel to provide reasonably necessary supervision and care to pretrial detainees and other inmates.

246.   Defendants were repeatedly and persistently put on notice that tolerating deficient staffing practices  at the jails would result in an unsafe jail environment and a failure to adequately monitor inmate medical needs as evidenced by a pattern of inadequate care that previously caused

Case ID: 230701473

detainees and other inmates to suffer from injuries, serious medical conditions, drug withdrawal and death while in custody, but despite such notice and the need for immediate corrective action, Defendants failed to take any action to stop these unconstitutional practices prior to decedent's death.

### COUNT I
### FEDERAL CONSTITUTIONAL CLAIM
**(Deliberate Indifference to Serious Medical Condition/Needs)**
**Plaintiff v. Defendants Commissioner Blanche Carney, Warden Michele Farrell, Warden Nancy Giannetta, Lt. Ivan Marshall, Sgt. Shawn Jay, C/O Poole, Corizon Health, Mohammed Haque, MD, Victoria Tunacao, RN, Danielle McGettigan, LPN, Kevin Raines, LPN, Sarah DeRose, RN, Emmanuel O. Marinho, RN,  Najla Dennis, LPN, Supervisor/Correction Officer John Doe(s) 1 – 10 and Corizon Health John Doe(s) 1 – 10**

247.    Plaintiff incorporates by reference herein the allegations set forth in the preceding paragraphs of this Complaint, inclusive, as if set forth herein at length.

248.    As a pretrial detainee, Plaintiff's decedent had a fundamental and clearly established right to bodily integrity and to be secure in his life and person and to receive appropriate medical care and treatment and attention for his serious medical conditions while confined under state authority.

249.    Defendants were responsible for ensuring the health, safety and well-being of pretrial detainees and other inmates placed under their care, custody and control, and for providing adequate medical care to detainees for serous medical conditions.

250.    Defendants were aware that a pretrial detainee with decedent's history of recent drug usage and addiction was exhibiting signs of drug withdrawal and would continue to suffer from drug withdrawal that required appropriate and constant medical monitoring and care.

251.    Defendants were also aware that Plaintiff's decedent faced a serious medical need due to drug withdrawal that required appropriate medical monitoring, medication and care.

Case ID: 230701473

252. Defendants knew that pretrial detainees and other inmates undergoing opioid withdrawal protocol, which was initiated during the time of their incarceration, would be especially vulnerable to the effects and clinical symptoms of withdrawal from their addiction due to sudden and abrupt cessation of use, and a result, would require proper medical care, medications and close and frequent monitoring to ensure timely intervention in the event of a serious and dangerous medical condition.

253. Notwithstanding Plaintiff's decedent's obvious and serious medical condition and desperate need for medical assistance and intervention, Defendants denied and/or refused and/or failed to render appropriate and/or timely medical care to treat decedent's opioid withdrawal, resulting in his death.

254. As set forth herein, Defendants' actions and/or inactions, in willfully and wantonly ignoring the obvious and serious medical needs of Plaintiff's decedent and the substantial risk of serious bodily injury and death, demonstrated deliberate indifference to Plaintiff's decedent's serious medical needs, in violation of his right to due process of law under the Fourteenth Amendment to the United States Constitution.

255. As a direct and proximate result of Defendants' deliberate indifference and disregard of decedent's acute and obvious medical condition and denial and/or refusal to provide adequate and timely medical care and treatment to Plaintiff's decedent, Plaintiff's decedent suffered physical injuries, pain and suffering, mental anguish, emotional distress and eventual death.

**WHEREFORE,** Plaintiff respectfully demands of Defendants, individually, jointly and/or severally, for Wrongful Death and Survival Damages, for compensatory damages, for punitive damages and for costs in excess of Fifty Thousand ($50,000) Dollars and such other relief this

47

Case ID: 230701473

Court deems just, reasonable and fair and for a trial by jury on all issues so triable as a matter of right.

**COUNT II**
**FEDERAL CONSTITUTIONAL CLAIMS**
**(Failure to Train, Supervise and Discipline)**
**Plaintiff v. Defendants City of Philadelphia, Philadelphia Department of Prisons,**
**Commissioner Blanche Carney, Warden Michele Farrell, Warden Nancy Giannetta, Lt.**
**Ivan Marshall, Sgt. Shawn Jay, Corizon Health, Supervisor/Correction Officer John Doe(s)**
**1 – 10 and Corizon Health John Doe(s) 1 – 10**

256.    Plaintiff incorporates by reference herein the allegations set forth in the preceding paragraphs of this Complaint, inclusive, as if set forth herein at length.

257.    As a pretrial detainee, Plaintiff's decedent had a fundamental and clearly established right to bodily integrity and to be secure in his life and person and to receive appropriate medical care and treatment and attention for his serious medical conditions while confined under state authority.

258.    At all times relevant hereto, Defendants were policy-makers, administrators and/or supervisors in the chain of command who were responsible for hiring correctional officers and medical staff assigned to CFCF and/or for the supervision, training and discipline of correctional officers and medical staff assigned to CFCF, all of whom were acting under color of state law and/or within the course and scope of their employment duties.

259.    Defendants were aware that the failure to properly train and supervise correctional officers and medical staff on how to correctly, timely and regularly monitor and care for pretrial detainees and other inmates in their custody suffering from serious medical conditions, drug addiction and opioid withdrawal symptoms previously resulted in the deprivation of constitutional and civil rights and numerous deaths of detainees and inmates from opioid withdrawal and drug overdose while in the custody of the PDP, and specifically at CFCF.

48

Case ID: 230701473

260.    The conduct as set forth above demonstrates that Defendants failed to adequately train and supervise and/or failed to have or implement or enforce proper policies regarding training and supervising, correctional officers and medical staff on how to correctly, regularly and timely monitor, observe and care for pretrial detainees and other inmates in their custody suffering from serious medical conditions, drug addiction and opioid withdrawal symptoms, how to respond to inmate medical emergencies, how to recognize the warnings signs of severe withdrawal and the need for medical intervention, and/or how to properly administer and ensure ingestion of potentially life-saving medication for opioid use disorder in a jail setting, and also failed to discipline employees who allow by their actions or inactions inmate deaths from drug overdose to occur on their watch, thereby depriving Plaintiff's decedent of his constitutional rights.

261.    The conduct set forth above demonstrates that Defendants ignored the obvious need for more effective or different screening and hiring practices as well as the obvious need for more effective or different training, supervision, investigation or discipline practices of correctional officers and medical staff.

262.    The violations of Mr. Rosario Lopez's constitutional rights under the Fourteenth Amendment to the United States Constitution, Plaintiff's damages, and the conduct of the individual Defendants were directly and proximately caused by the actions and/or inactions of Defendants, which have, with deliberate indifference, failed to properly train, educate, control, supervise and/or discipline their correctional officers and/or medical staff in the correct, regular and proper supervision, monitoring, care and treatment of detainees suffering from drug withdrawal or overdose.

263.    As a direct and proximate result of Defendants' unreasonable, unjustifiable and unconstitutional conduct in failing to properly train, educate, control, supervise and/or discipline

Case ID: 230701473

their correctional officers and/or medical staff, Plaintiff's decedent suffered physical injuries, pain

and suffering, mental anguish, emotional distress and eventual death

  *WHEREFORE,* Plaintiff respectfully demands of Defendants, individually, jointly and/or

severally, for Wrongful Death and Survival Damages, for compensatory damages, for punitive

damages and for costs in excess of Fifty Thousand ($50,000) Dollars and such other relief this

Court deems just, reasonable and fair and for a trial by jury on all issues so triable as a matter of

right.

**COUNT III**
**FEDERAL CONSTITUTIONAL CLAIM**
**(Custom, Pattern, Practice and Policy)**
**Plaintiff v. Defendants City of Philadelphia, Philadelphia Department of Prisons,**
**Commissioner Blanche Carney, Warden Michele Farrell, Warden Nancy Giannetta, Lt.**
**Ivan Marshall, Sgt. Shawn Jay, Corizon Health, Supervisor/Correction Officer John Doe(s)**
**1 – 10 and Corizon Health John Doe(s) 1 – 10**

  264. Plaintiff incorporates by reference herein the allegations set forth in the preceding

paragraphs of this Complaint, inclusive, as if set forth herein at length.

  265. As a pretrial detainee, Plaintiff's decedent had a fundamental and clearly

established right to bodily integrity and to be secure in his life and person and to receive

appropriate medical care and treatment and attention for his serious medical conditions while

confined under state authority.

  266. Defendants were municipalities, organizations, policy-makers, administrators

and/or supervisors in the chain of command who were responsible for ensuring the health, safety

and well-being of pretrial detainees and other inmates placed under their custody and control, and

were also responsible for establishing, maintaining, enforcing, implementing and administering

appropriate policies, procedures and practices governing the care, supervision, monitoring and

Case ID: 230701473

medical treatment of pretrial detainees and other inmates suffering from opiate withdrawal, in order to prevent foreseeable harm and death to detainees and inmates.

267.    Defendants were aware that the failure to have appropriate policies and procedures regarding the care, supervision, monitoring and treatment of pretrial detainees and other inmates suffering from serious medical conditions, drug addiction and opioid withdrawal symptoms previously resulted in the deprivation of constitutional and civil rights and numerous deaths of detainees and inmates from opiate withdrawal and drug overdose while in the custody of the PDP, and specifically at CFCF.

268.    Defendants acted with deliberate indifference to decedent's constitutional rights by establishing, maintaining and enforcing customs, procedures, practices and/or policies of inadequate medical screening, medical intervention, withdrawal programs, outside referrals, treatment plans and protocols, medical monitoring, observation and supervision of pretrial detainees and inmates in their care, custody and control, including and particularly those who were suffering from opioid addiction and withdrawal and undergoing withdrawal protocol, such as Plaintiff's decedent.

269.    Defendants acted with deliberate indifference to decedent's constitutional rights by establishing, maintaining and enforcing customs, procedures and/or policies of denying or refusing to provide detainees suffering from opiate withdrawal proper medical treatment, including adequate and regular medical monitoring, cell checks, medical evaluations, and safety observations of opioid withdrawal symptoms.

270.    Defendants acted with deliberate indifference to decedent's constitutional rights by establishing, maintaining and enforcing customs, procedures and/or policies of refusing or denying potentially life-saving medications to detainees and inmates to treat opioid disorder and

Case ID: 230701473

withdrawal based on medically unfounded or unjustified concerns of diversion and/or failing to adequately monitor the safe administration and ingestion of potentially life-saving medication to treat detainees undergoing withdrawal protocol and detoxification.

271.  As detailed herein, Defendants acted with deliberate indifference to decedent's constitutional rights by establishing, maintaining and enforcing customs, procedures and/or policies of permitting jail facilities within the PDP, including CFCF, to be systemically, severely and chronically mismanaged and understaffed of correctional officers and medical personnel, for such a prolonged period of time and to such an unacceptable degree and extent, as to put Defendants on notice prior to decedent's death of the urgent need to take immediate corrective action in order to prevent inmate and detainee deaths from opioid withdrawals and drug overdose.

272.  As detailed herein, prior to decedent's death, Defendants were aware of a highly disturbing pattern of prior incidents in which other detainees and inmates in the custody of the PDP had been subjected to prolonged and restrictive lockdowns, inhuman and deplorable conditions of confinement, unprecedented levels of violence and an alarming number of inmate deaths from murder, suicide and drug overdose, many of which occurred in cells and blocks at CFCF that had no assigned staff, absentee staff or been left unattended for hours or even days, because of systemic, severe and chronic deficiencies in staffing levels of correctional officers and/or medical staff to watch over detainees and inmates.

273.  As detailed herein, the systemic, severe and chronic deficiencies in staffing levels of correctional officers and/or medical staff, which has resulted in the failure to properly observe, monitor and check on the health, safety and well-being of detainees and inmates and a pattern of harm to detainees and inmates who were left unsupervised, including an alarming number of inmate deaths who were murdered by other inmates, died from suicide or drug overdose, was so

Case ID: 230701473

wide-spread and pervasive within the PDP, including specifically at CFCF, that it developed into a normal and customary practice within the PDP of which Defendants were aware and tolerated prior to decedent's death.

274.   The risk of harm or death to detainees, such as decedent, from opioid withdrawal and drug overdose as a result of inadequate monitoring and deficient staffing practices maintained within the PDP, including CFCF, was so obvious and great, that Defendants' inaction to prevent foreseeable harm to Plaintiff and other detainees arising from these unconstitutional policies, customs and practices may be properly deemed as indicating their tolerance, acquiescence and/or tacit approval, acceptance and assent in continuing to maintain such policies, customs and practices.

275.   The violations of decedent's constitutional rights under the Fourteenth Amendment to the United States Constitution, Plaintiff's damages, and the conduct of the individual Defendants were directly and proximately caused by the deliberate choices, decision-making, actions and/or inactions of Defendants, which have, with deliberate indifference, established, maintained and enforced customs, practices, procedures and/or policies of failing to adequately monitor inmates suffering from serious medical conditions, drug addiction and opiate withdrawal, failing to provide timely and adequate intervention, medicine and medical care and treatment and/or failing to address systemic, severe and chronic deficiencies in staffing levels of correctional officers and medical personnel which were known to create unsupervised, unsafe and dangerous jail environments resulting in preventable and unnecessary harm and death to detainees and inmates, including Plaintiff's decedent.

276.   As a direct and proximate result of Defendants' unreasonable, unjustifiable and unconstitutional customs, procedures, practices and/or policies as described herein, Plaintiff's

Case ID: 230701473

decedent suffered physical injuries, pain and suffering, mental anguish, emotional distress and eventual death

**WHEREFORE**, Plaintiff respectfully demands of Defendants, individually, jointly and/or severally, for Wrongful Death and Survival Damages, for compensatory damages, for punitive damages and for costs in excess of Fifty Thousand ($50,000) Dollars and such other relief this Court deems just, reasonable and fair and for a trial by jury on all issues so triable as a matter of right.

**COUNT IV**
**STATE LAW NEGLIGENCE CLAIMS**
**Plaintiff v. Defendants Corizon Health, Mohammed Haque, MD, Victoria Tunacao, RN, Danielle McGettigan, LPN, Kevin Raines, LPN, Sarah DeRose, RN, Emmanuel O. Marinho, RN, Najla Dennis, LPN and Corizon Health John Doe(s) 1 – 10**

277.    Plaintiff incorporates by reference herein the allegations set forth in the preceding paragraphs of this Complaint, inclusive, as if set forth herein at length.

278.    Defendants had a duty to comply with generally accepted medical standards of care in the medical treatment of Mr. Rosario Lopez.

279.    Defendants had a duty to establish policies, practices and procedures to ensure that detainees undergoing opioid withdrawal, like Mr. Rosario Lopez, received proper monitoring and emergency treatment.

280.    Defendants, acting through its agents described herein, violated their respective duties of care to Mr. Rosario Lopez, and provided care that was below the applicable standards of care for monitoring and supervising detainees going through opiate withdrawal.

281.    Defendants' violation of their duty of care to Mr. Rosario Lopez was a direct and proximate cause and a substantial factor in bringing about Mr. Rosario Lopez's death and damages as outlined above, and, as a result, Defendants are liable to Plaintiff.

Case ID: 230701473

282.    Because individual Defendants were acting as agents, servants, and/or employees of Defendant Corizon Health, and because this individual Defendants were acting within the scope and course of their employment, and under the direct control and supervision of Defendant Corizon Health, Defendant Corizon Health is, likewise, liable to Plaintiff on the basis of vicarious liability and/or *respondeat superior* liability.

*WHEREFORE,* Plaintiff respectfully demands of Defendants, individually, jointly and/or severally, for Wrongful Death and Survival Damages, for compensatory damages, for punitive damages and for costs in excess of Fifty Thousand ($50,000) Dollars and such other relief this Court deems just, reasonable and fair and for a trial by jury on all issues so triable as a matter of right.

## COUNT V
## WRONGFUL DEATH ACTION
### Plaintiff v. All Defendants

283.    Plaintiff incorporates by reference herein the allegations set forth in the preceding paragraphs of this Complaint, inclusive, as if set forth herein at length.

284.    Plaintiff was properly and duly granted Letters of Administration regarding the Estate of Juan Yadiel Rosario Lopez, deceased, by the Register of Wills for the County of Philadelphia, in the Commonwealth of Pennsylvania and, as such, he is the legal representative of the Estate of Juan Yadiel Rosario Lopez.

285.    Plaintiff brings this action as the personal representative of the decedent and pursuant to 42 Pa. C.S.A. §8301 and Pa. R. Civ. P. 2202 and claims all the benefits of the Wrongful Death Act on behalf of those persons entitled to recover under the law, including: Jael Samuel Rosario Cordova (minor son).

Case ID: 230701473

286.     Decedent did not bring an action against Defendants for damages for the injuries causing his death during his lifetime.

287.     By reason of the death of Plaintiff's decedent Juan Yadiel Rosario Lopez, his above named beneficiaries have suffered pecuniary and non—pecuniary losses as well as funeral expenses and expenses of administration necessitated by reason of the catastrophic injuries that caused Plaintiff's decedent's wrongful death.

**WHEREFORE,** Plaintiff respectfully demands of Defendants, individually, jointly and/or severally, for Wrongful Death and Survival Damages, for compensatory damages, for punitive damages and for costs in excess of Fifty Thousand ($50,000) Dollars and such other relief this Court deems just, reasonable and fair and for a trial by jury on all issues so triable as a matter of right.

**COUNT VI**
**SURVIVAL ACTION**
**<u>Plaintiff v. All Defendants</u>**

288.     Plaintiff incorporates by reference herein the allegations set forth in the preceding paragraphs of this Complaint, inclusive, as if set forth herein at length.

289.     Plaintiff brings this action on behalf of the Estate of Juan Yadiel Rosario Lopez, pursuant to 42 Pa. C.S.A. §8302 and 20 Pa. C.S.A. §3371, and claims all the benefits of the Survival Act on behalf of those persons entitled to recover under the law.

290.     Plaintiff claims on behalf of Plaintiff's decedent Juan Yadiel Rosario Lopez all damages suffered by decedent, including but not limited to, the conscious pain and suffering he sustained, his lost earnings and the loss of his future earning capacity, and all other damages recoverable pursuant to the Survival Act.

Case ID: 230701473

*WHEREFORE,* Plaintiff respectfully demands of Defendants, individually, jointly and/or severally, for Wrongful Death and Survival Damages, for compensatory damages, for punitive damages and for costs in excess of Fifty Thousand ($50,000) Dollars and such other relief this Court deems just, reasonable and fair and for a trial by jury on all issues so triable as a matter of right.

Respectfully submitted,

**THE PRIVITERA LAW FIRM LLC**

BY:  */s/ Dino Privitera*
DINO PRIVITERA, ESQUIRE
Attorney for Plaintiff

Date: July 17, 2023

Case ID: 230701473

## <u>VERIFICATION</u>

I, Juan Rosario Santiago, Administrator of the Estate of Juan Yadiel Rosario Lopez, deceased, having reviewed the attached Complaint (with assistance from Spanish-speaking Interpreter), verify that it is based on information I have furnished to counsel in connection with the preparation of this matter. The language of the Complaint is that of counsel and is not mine. To the extent that the attached Complaint is based on factual information I have given to counsel, I verify that it is true and correct to the best of knowledge, information and belief. To the extent that the legal contents of the Complaint are that of counsel, I have relied upon counsel in making this verification. I understand that the statements herein are made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

_Juan Rosario Santiago_
Juan Rosario Santiago

Case ID: 230701473

## CERTIFICATE OF SERVICE

I, Dino Privitera, Esquire, certify that, I am counsel for the Plaintiff named herein, that, on the date indicated below, I electronically filed the attached Civil Action Complaint on behalf of the Plaintiff with the Prothonotary utilizing the Philadelphia County Court of Common Pleas Electronic Filing System.  Upon receipt of notification of the acceptance of the e-filing, a time-stamped copy of the attached Civil Action Complaint will be served as provided by the applicable Rules of Civil Procedure on all named Defendants and Affidavits of Service attesting to the manner, form, place and date of service will be promptly filed of record.

Dino Privitera, Esquire

Date:  July 17, 2023

# EXHIBIT "A"

Case ID: 230701473

LETTERS OF ADMINISTRATION

**REGISTER'S OFFICE**
PHILADELPHIA COUNTY, PA

Nᵒ A5617-2021

ESTATE OF **JUAN YADIEL ROSARIO LOPEZ**

Social Security No.  **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**

WHEREAS,  **JUAN YADIEL ROSARIO LOPEZ**

late of  **2824 B ST, PHILADELPHIA, PA 19134**

died on the **27th** day of **July** , **2021** ; and

WHEREAS, the grant of letters of administration is required for the administration of said estate.

THEREFORE, I, TRACEY L. GORDON, Register for the Probate of Wills and Grant of Letters Testamentary and of Administration, in and for the County of Philadelphia in the Commonwealth of Pennsylvania, hereby certify that I have granted Letters of Administration

to  **JUAN ROSARIO SANTIAGO**

who ha ˢ duly qualified as **Administrator** of the estate of the above named decedent and ha ˢ agreed to administer the estate according to law, all of which fully appear of record in the Office of the Register of Wills of Philadelphia County, Pennsylvania.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of my office, at Philadelphia, the **1st** day of **December** **2021**

*Justin Graham*
*Deputy Register*

10-36 (Rev. 10/99)

# EXHIBIT B





No Items in Cart　LOGIN

Civil Docket Report

A $5 Convenience fee will be added to the transaction at checkout.

## Case Description

| | |
|---|---|
| **Case ID:** | 230701473 |
| **Case Caption:** | ROSARIO SANTIAGO VS CITY OF PHILADELPHIA ETAL |
| **Filing Date:** | Monday , July 17th, 2023 |
| **Court:** | MAJOR JURY-STANDARD |
| **Location:** | CITY HALL |
| **Jury:** | JURY |
| **Case Type:** | PERSONAL INJURY - OTHER |
| **Status:** | WAITING TO LIST CASE MGMT CONF |

## Related Cases

*No related cases were found.*

## Case Event Schedule

*No case events were found.*

## Case motions

*No case motions were found.*

## Case Parties

| Seq # | Assoc | Expn Date | Type | Name |
|---|---|---|---|---|
| 1 | | | ATTORNEY FOR PLAINTIFF | PRIVITERA, DINO |
| **Address:** PRIVITERA LAW FIRM LLC 123 S BROAD ST SUITE 1200 PHILADELPHIA PA 19109 (215)709-7007 dino@priviteralaw.com | | **Aliases:** | *none* | |
| | | | | |
| 2 | 1 | | ADMINISTRATOR - PLAINTIFF | ROSARIO SANTIAGO, JUAN |
| **Address:** 924 CARVER STREET PHILADELPHIA PA 19124 | | **Aliases:** | *none* | |

| 3 | | | DEFENDANT | CORIZON HEALTH INC |
|---|---|---|---|---|
| **Address:** | 105 WESTPARK DRIVE BRENTWOOD TN 37027 | **Aliases:** | *none* | |

| 4 | | | DEFENDANT | HAQUE, MOHAMMED |
|---|---|---|---|---|
| **Address:** | 7901 STATE ROAD PHILADELPHIA PA 19136 | **Aliases:** | *none* | |

| 5 | | | DEFENDANT | TUNACAO, VICTORIA |
|---|---|---|---|---|
| **Address:** | 7901 STATE ROAD PHILADELPHIA PA 19136 | **Aliases:** | *none* | |

| 6 | | | DEFENDANT | MCGETTIGAN, DANIELLE |
|---|---|---|---|---|
| **Address:** | 7901 STATE ROAD PHILADELPHIA PA 19136 | **Aliases:** | *none* | |

| 7 | | | DEFENDANT | RAINES, KEVIN |
|---|---|---|---|---|
| **Address:** | 7901 STATE ROAD PHILADELPHIA PA 19136 | **Aliases:** | *none* | |

| 8 | | | DEFENDANT | DEROSE, SARAH |
|---|---|---|---|---|
| **Address:** | 7901 STATE ROAD PHILADELPHIA PA 19136 | **Aliases:** | *none* | |

| 9 | | | DEFENDANT | MARINHO, EMMANUEL |
|---|---|---|---|---|
| **Address:** | 7901 STATE ROAD PHILADELPHIA PA 19136 | **Aliases:** | *none* | |

| 10 | | | DEFENDANT | DENNIS, NAJLA |
|---|---|---|---|---|
| **Address:** | 7901 STATE ROAD PHILADELPHIA PA | **Aliases:** | *none* | |

| | | | | DEFENDANT | SUPERVISOR/CORRECTION OFFICERS, JOHN DOES 1-10 |
|---|---|---|---|---|---|
| | 19136 | | | | |
| | | | | | |
| 11 | | | | DEFENDANT | SUPERVISOR/CORRECTION OFFICERS, JOHN DOES 1-10 |
| Address: | 7901 STATE ROAD PHILADELPHIA PA 19136 | Aliases: | *none* | | |
| | | | | | |
| 12 | | | | DEFENDANT | CORIZON HEALTH, JOHN DOES 1-10 |
| Address: | 7901 STATE ROAD PHILADELPHIA PA 19136 | Aliases: | *none* | | |
| | | | | | |
| 13 | | | | DEFENDANT | CITY OF PHILADELPHIA |
| Address: | 1515 ARCH STREET 14TH FLOOR PHILADELPHIA PA 19102 | Aliases: | *none* | | |
| | | | | | |
| 14 | | | | DEFENDANT | PHILADELPHIA DEPARTMENT OF PRISONS |
| Address: | 7901 STATE ROAD PHILADELPHIA PA 19136 | Aliases: | *none* | | |
| | | | | | |
| 15 | | | | DEFENDANT | CARNEY, BLANCHE |
| Address: | 7901 STATE ROAD PHILADELPHIA PA 19136 | Aliases: | *none* | | |
| | | | | | |
| 16 | | | | DEFENDANT | FARRELL, MICHELE |
| Address: | 7901 STATE ROAD PHILADELPHIA PA 19136 | Aliases: | *none* | | |
| | | | | | |
| 17 | | | | DEFENDANT | GIANNETTA, NANCY |
| Address: | 7901 STATE ROAD PHILADELPHIA PA 19136 | Aliases: | *none* | | |

| 18 | | | DEFENDANT | MARSHALL, IVAN |
|---|---|---|---|---|
| **Address:** | 7901 STATE ROAD PHILADELPHIA PA 19136 | **Aliases:** | *none* | |

| 19 | | | DEFENDANT | JAY, SHAWN |
|---|---|---|---|---|
| **Address:** | 7901 STATE ROAD PHILADELPHIA PA 19136 | **Aliases:** | *none* | |

| 20 | | | DEFENDANT | POOLE, |
|---|---|---|---|---|
| **Address:** | 7901 STATE ROAD PHILADELPHIA PA 19136 | **Aliases:** | *none* | |

| 21 | | | TEAM LEADER | ANDERS, DANIEL J |
|---|---|---|---|---|
| **Address:** | 529 CITY HALL PHILADELPHIA PA 19107 | **Aliases:** | *none* | |

## Docket Entries

| Filing Date/Time | Docket Type | Filing Party | Disposition Amount |
|---|---|---|---|
| 17-JUL-2023 01:24 PM | ACTIVE CASE | | |
| **Docket Entry:** | E-Filing Number: 2307029869 | | |
| | | | |
| 17-JUL-2023 01:24 PM | COMMENCEMENT CIVIL ACTION JURY | PRIVITERA, DINO | |
| **Documents:** | Click link(s) to preview/purchase the documents Final Cover | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | *none.* | | |
| | | | |
| 17-JUL-2023 01:24 PM | COMPLAINT FILED NOTICE GIVEN | PRIVITERA, DINO | |

| Documents: | ⚲ Click link(s) to preview/purchase the documents<br>Complaint - 2.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry |
|---|---|---|
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 FILED. | |

| 17-JUL-2023 01:24 PM | JURY TRIAL PERFECTED | PRIVITERA, DINO | |
|---|---|---|---|
| **Docket Entry:** | 8 JURORS REQUESTED. | | |

| 17-JUL-2023 01:24 PM | WAITING TO LIST CASE MGMT CONF | PRIVITERA, DINO | |
|---|---|---|---|
| **Docket Entry:** | *none.* | | |

| 27-JUL-2023 11:45 AM | ACCEPTANCE OF SERVICE FILED | PRIVITERA, DINO | |
|---|---|---|---|
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>Affidavit of Service of Complaint - City Defendants.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | SERVICE OF PLAINTIFF'S COMPLAINT ACCEPTED BY SHAWN JAY, POOLE, IVAN MARSHALL, CITY OF PHILADELPHIA AND BLANCHE CARNEY ON 07/26/2023 FILED. (FILED ON BEHALF OF JUAN ROSARIO SANTIAGO) | | |

| 16-AUG-2023 12:17 PM | PRAECIPE TO REINSTATE CMPLT | PRIVITERA, DINO | |
|---|---|---|---|
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>Praecipe to Reinstate Complaint - 8.16.2023.pdf<br>Exhibit A.pdf<br>Civil Cover Sheet.pdf<br>Time-stamped Complaint - 2.pdf<br>COS - Praecipe to Reinstate - 8.16.2023.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 REINSTATED. (FILED ON BEHALF OF JUAN ROSARIO SANTIAGO) ENTRY OF APPEARANCE FILED ON BEHALF OF JUAN ROSARIO SANTIAGO. | | |

| 18-AUG-2023 07:54 PM | AFFIDAVIT OF SERVICE FILED | PRIVITERA, DINO | |
|---|---|---|---|
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>DENNIS AFFIDAVIT.pdf<br>DEROSE AFFIDAVIT.pdf<br>FARRELL AFFIDAVIT.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |

| | GIANNETTA AFFIDAVIT.pdf<br>HAQUE AFFIDAVIT.pdf<br>MARINHO AFFIDAVIT.pdf<br>MCGETTIGAN AFFIDAVIT.pdf<br>RAINES AFFIDAVIT.pdf<br>TUNACAO AFFIDAVIT.pdf |
|---|---|
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON VICTORIA TUNACAO, SARAH DEROSE, NANCY GIANNETTA, NAJLA DENNIS, MOHAMMED HAQUE, MICHELE FARRELL, KEVIN RAINES, EMMANUEL MARINHO AND DANIELLE MCGETTIGAN BY PERSONAL SERVICE ON 08/16/2023 FILED. (FILED ON BEHALF OF JUAN ROSARIO SANTIAGO) |

► Case Description     ► Related Cases     ► Event Schedule     ► Case Parties     ► Docket Entries

Search Home

# EXHIBIT C

ANNE B. TAYLOR                                    Attorney for City of Philadelphia
Chief Deputy City Solicitor, Civil Rights Unit
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA  19102
(215) 683-5381
anne.taylor@phila.gov

---

| | | |
|---|---|---|
| **JUAN ROSARIO SANTIAGO, AS** | : | |
| **ADMINISTRATOR OF THE ESTATE OF** | : | |
| **JUAN YADIEL ROSARIO LOPEZ,** | : | |
| **DECEASED** | : | **COURT OF COMMON PLEAS** |
| **924 Carver Street** | : | **PHILADELPHIA COUNTY** |
| **Philadelphia, Pennsylvania 19124** | : | |
| | : | |
| **PLAINTIFF** | : | |
| | : | |
| **v.** | : | |
| | : | **JULY TERM, 2023** |
| | : | **NO. 1473** |
| **CITY OF PHILADELPHIA** | : | **JURY TRIAL DEMANDED** |
| **1515 Arch Street, 14th Floor** | : | |
| **Philadelphia, Pennsylvania 19102** | : | |
| | : | |
| **and** | : | |
| | : | |
| **PHILADELPHIA DEPARTMENT OF** | : | |
| **PRISONS** | : | |
| **7901 State Road** | : | |
| **Philadelphia, Pennsylvania 19136** | : | |
| | : | |
| **and** | : | |
| | : | |
| **BLANCHE CARNEY** | : | |
| **7901 State Road** | : | |
| **Philadelphia, Pennsylvania 19136** | : | |
| | : | |
| **and** | : | |
| | : | |
| **MICHELE FARRELL** | : | |
| **7901 State Road** | : | |
| **Philadelphia, Pennsylvania 19136** | : | |
| | : | |
| **and** | : | |

**NANCY GIANNETTA**                          :
**7901 State Road**                          :
**Philadelphia, Pennsylvania 19136**         :
                                             :
**and**                                      :
                                             :
**LT. IVAN MARSHALL**                        :
**7901 State Road**                          :
**Philadelphia, Pennsylvania 19136**         :
                                             :
**and**                                      :
                                             :
**SGT. SHAWN JAY**                           :
**7901 State Road**                          :
**Philadelphia, Pennsylvania 19136**         :
                                             :
**and**                                      :
                                             :
**CORRECTIONS OFFICER POOLE**                :
**7901 State Road**                          :
**Philadelphia, Pennsylvania 19136**         :
                                             :
**and**                                      :
                                             :
**CORIZON HEALTH, INC.**                     :
**105 Westpark Drive**                       :
**Brentwood, Tennessee 37027**               :
                                             :
**and**                                      :
                                             :
**MOHAMMED HAQUE, MD**                       :
**7901 State Road**                          :
**Philadelphia, Pennsylvania 19136**         :
                                             :
**and**                                      :
                                             :
**VICTORIA TUNACAO, RN**                     :
**7901 State Road**                          :
**Philadelphia, Pennsylvania 19136**         :
                                             :
**and**                                      :
                                             :
**DANIELLE MCGETTIGAN, LPN**                 :
**7901 State Road**                          :
**Philadelphia, Pennsylvania 19136**         :

2

|                                                    |   |
|----------------------------------------------------|---|
|                                                    | : |
| and                                                | : |
|                                                    | : |
| **KEVIN RAINES, LPN**                              | : |
| **7901 State Road**                                | : |
| **Philadelphia, Pennsylvania 19136**              | : |
|                                                    | : |
| and                                                | : |
|                                                    | : |
| **SARAH DEROSE, RN**                               | : |
| **7901 State Road**                                | : |
| **Philadelphia, Pennsylvania 19136**              | : |
|                                                    | : |
| and                                                | : |
|                                                    | : |
| **EMMANUEL O. MARINHO, RN**                        | : |
| **7901 State Road**                                | : |
| **Philadelphia, Pennsylvania 19136**              | : |
|                                                    | : |
| and                                                | : |
|                                                    | : |
| **NAJLA DEM1IS, LPN**                              | : |
| **7901 State Road**                                | : |
| **Philadelphia, Pennsylvania 19136**              | : |
|                                                    | : |
| and                                                | : |
|                                                    | : |
| **SUPERVISOR/CORRECTION**                          | : |
| **OFFICER JOHN DOE(S) 1 – 10**                     | : |
| **7901 State Road**                                | : |
| **Philadelphia, Pennsylvania 19136**              | : |
|                                                    | : |
| and                                                | : |
|                                                    | : |
| **CORIZON HEALTH JOHN DOE(S) 1- 10**               | : |
| **7901 State Road**                                | : |
| **Philadelphia, Pennsylvania 19136**              | : |
|                                                    | : |
| **DEFENDANTS.**                                    | : |

---

## <u>NOTICE OF REMOVAL</u>

**To:**    **Prothonotary**
       **Court of Common Pleas of Philadelphia County**

      Pursuant to 28 U.S.C. § 1446(d), defendant City of Philadelphia files with this Court a

3

copy of the Notice of Removal as filed in the United States District Court for the Eastern District of Pennsylvania on August 25, 2023.

A true copy of defendant's Notice of Removal, as filed with the United States District Court for the Eastern District of Pennsylvania, is attached as Exhibit 1 hereto.


Date:  August 25, 2023                                      Respectfully submitted,

                                                            /s/ *Anne B. Taylor*
                                                            Anne B. Taylor
                                                            Chief Deputy City Solicitor
                                                            Pa. Attorney ID No. 206057
                                                            Philadelphia Law Department
                                                            1515 Arch Street, 14th Floor
                                                            Philadelphia, PA 19102
                                                            215-683-5381 (phone)
                                                            anne.taylor@phila.gov

4