**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUAN ROSARIO SANTIAGO**, as Administrator of the Estate of JUAN YADIEL ROSARIO LOPEZ, deceased, Plaintiff, | : | **CIVIL ACTION** |
| | : | **NO.: 2:23-cv-03317-MKC** |
| **v.** | : | |
| **CITY OF PHILADELPHIA, et al.**, Defendants. | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS', CITY OF PHILADELPHIA AND BLANCHE CARNEY, MOTION FOR SUMMARY JUDGMENT**

Defendants, City of Philadelphia and Blanche Carney (hereinafter collectively "City Defendants" unless otherwise designated), by and through their undersigned counsel, hereby submit this Memorandum of Law in support of their Motion for Summary Judgment ("Motion") on all claims asserted by Plaintiff Juan Rosario Santiago, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

Plaintiff Juan Rosario Santiago, in his capacity as Administrator of the Estate of his late son Juan Yadiel Rosario Lopez ("Mr. Rosario Lopez" or "decedent"), asserts claims against City Defendants for violations of Mr. Rosario Lopez's constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff brought this wrongful death action against, *inter alia*, City Defendants. *See Plaintiff's Amended Complaint* (ECF Doc. 33). In this § 1983 civil rights action, Plaintiff seeks to recover for the in-custody death of Mr. Rosario Lopez on July 27, 2021, following "events that occurred while he was a pre-trial detainee" at Curran-Fromhold Correctional Facility ("CFCF"). *See Id.*, ¶ 7 (ECF Doc. 33). The operative complaint generally alleges that Mr. Rosario Lopez was not properly monitored or treated while going through opioid withdrawal at

CFCF, allowing him to become sicker and sicker, and later died at the hospital from complications of drug intoxication. *See Id*. at ¶ 1 (ECF Doc. 33). Based on the foregoing, Plaintiff asserted the following claims:

1) Count I: Deliberate Indifference to Serious Medical Condition/Needs;
2) Count II: Failure to Train, Supervise and Discipline;
3) Count III: Custom, Pattern, Practice and Policy; and
4) Count IV: Wrongful Death.

*See Id*[1]. Specifically, Plaintiff contends City Defendants violated Mr. Rosario Lopez's 14th Amendment rights under the United States Constitution because they were deliberately indifferent to his serious medical needs/condition due to an unconstitutional policy or practice, or failure to train supervise, or discipline staff causing employees to fail to provide proper medical care. *See Id*., Counts I-III (ECF Doc. 33).

Discovery is complete and this matter is ripe for summary judgment. The Court should grant summary judgment in favor of Defendants, City of Philadelphia and Blanche Carney, for this action arising from the in-custody, drug-related death of Juan Yadiel Rosario Lopez ("Mr. Rosario Lopez") during his detention at CFCF as there is no material issue of fact that would allow Plaintiff to prevail against City Defendants. This is not an action where affirmative acts by a corrections officer allegedly caused an individual harm; rather, Mr. Rosario Lopez died from medical causes[2] unattributable to state action and contends that his care while in custody was constitutionally inadequate. The Constitution does not require prison officials to address non-obvious conditions, and any other criticisms of individual correction officer conduct or staffing

---

[1] On September 16, 2026, Defendants, Nancy Gianetta, Michele Farrell, Lt. Ivan Marshall, Sgt. Shawn Jay and Correction Officer Jeffrey Poole were dismissed from this action by stipulation pursuant to Fed. R.C.P. 41(a)(1). *See* Stipulation (ECF Doc. 60).

[2] The specific mechanism of death may be in dispute; however, City Defendants do not believe it is material, pending review of Plaintiff's response, if any.

do not satisfy the strict elements of Plaintiff's claims. Plaintiff's claims against City Defendants are based on an alleged unconstitutional policy or custom fail because there is no cognizable underlying constitutional claim for a jury to decide. They also have not developed *admissible* evidence of a widespread unconstitutional policy, custom or practice that directly caused Mr. Rosario Lopez's death. Plaintiff's state law claims based on Pennsylvania's wrongful death and survival statutes are derivative of Plaintiff's underlying federal claims and must be dismissed upon the Court granting summary judgment in favor of City Defendants. Although this is an undoubtedly tragic situation, Plaintiff's claims against City Defendants should be dismissed.

For these reasons, and the reasons set forth below, City Defendants move for summary judgment on all claims against them pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II. STATEMENT OF FACTS

On July 21, 2021, Mr. Rosario Lopez was taken into custody by Philadelphia police officers for alleged drug offenses and was arraigned and charged with possession with intent to deliver a controlled substance, i.e., suspected heroin/fentanyl. *See* Doc. No. 33 at ¶ 40; *see also Office of Special Investigations Report (CONFIDENTIAL)*, CITY_000100056, attached hereto as **Exhibit A**, CITY_0004. On the morning of July 22, 2021, at approximately 8:00 AM, Mr. Rosario Lopez was transported and admitted to CFCF as a pre-trial detainee. *See* Doc. No. 33 at ¶¶ 40-41; *see also Surveillance Video*[3], CITY_7167, attached hereto as **Exhibit B**. As part of the processing, at 8:11 AM, Mr. Rosario Lopez was placed in an intake holding cell. *See* **Exhibit B**, Intake Reception and Intake Holding Screens, at 8:11 AM. At 8:12 AM, a medical nurse walks

[3] As noted by the United States Supreme Court in *Scott v. Harris*, 550 U.S. 372, 382 (2007), this Honorable Court must view the facts in the light depicted by the videotape, not the "visible fiction" that is contained in Plaintiff's Amended Complaint. *See also El v. City of Pittsburgh*, 975 F.3d 327 (3d Cir. 2020); *Ball v. Bower,* 2013 U.S. Dist. Lexis 167289, at *17-*18 (M.D. Pa. Aug. 29, 2013) (Carlson, M.J.) ("where critical events at issue have been captured on videotape, the Court is obliged to consider the videotaped evidence in determining whether there is any genuine dispute as to material facts.").

down the intake corridor of the Receiving Area from the medical intake area, and within 24 seconds, enters the intake holding cell, and at minimum, makes a visual observation of Mr. Rosario Lopez, who proceeds to lay back down on the bench following the same. *See Id*., Intake Corridor 1 and Intake Holding Screens, at 8:12 AM; *see also Deposition Transcript of First Deputy Commissioner Xavier Beaufort*, pp. 177:4-179:7, attached hereto as **Exhibit C**. Mr. Rosario Lopez is then transferred, at 8:34 AM, from the Intake Holding cell to Cell #2, with a clear glass door, in the Receiving Area. *See Id.*, Intake Corridor 1 and Intake Holding Screens, at 8:34 AM; *see also* **Exhibit C**, pp. 179:8-180:2. Although there are cells in the Receiving Area, they are not "housing" cells. *See* **Exhibit C**, pp. 25:24-26:2. They are just large, "holding" cells with only benches, toilets and sinks, for inmates that are being process *before* they go to a housing unit. *See Id*., pp. 26:3-11. Medical staff conducts medical monitoring rounds of inmates that have indicated they are going through withdrawal. *See Id.*, pp. 29:23-31:5. Nonetheless, correction officers are walking up and down the aisles of the Receiving Area, and if they see someone having some type of medical issue, they will open the cell door and contact medical for medical to assess the inmate. *See Id*. pp. 34:8-35:8.

As part of further processing, at 6:00 PM, Mr. Rosario Lopez underwent an Intake Evaluation and C.O.W.S. (Clinical Opiate Withdrawal Score) ("COWS") Assessment by medical nursing staff in the medical intake area. *See* **Exhibit A**, CITY_0004, 00023-30; *see also Deposition Transcript of Bruce Herdman, Ph.D.*, at pp. 39:7-10, attached hereto as **Exhibit D**. He self-reported opioid use of heroin. *See* **Exhibit A**, CITY_0024. The medical offices at CFCF used for Intake Evaluations are adjacent to the intake cells with one (1) door between them. *See* **Exhibit D**, pp. 38:16-39:11. Mr. Rosario Lopez's COWS score was 15, which is moderate, and did not require emergent intervention. *See* **Exhibit A**, CITY_0004, 0028-29. Dr. Lalitha

Trivikram, MD noted that he was administered comfort medications before he left intake. *See Id*, CITY_0023. Orders were written for withdrawal medications and an inhaler. *See Id*, CITY_0004, 0024-30. Mr. Rosario Lopez's medical information was not shared with correctional staff as HIPAA regulations prevent the sharing of personal health information with security/correction officers. *See* **Exhibit D**, pp. 42:14-43:14.

As part of the Philadelphia Department of Prisons ("PDP") medical monitoring program, the COWS Assessment is used "to identify whether someone needs to receive more attention than average." *See* **Exhibit D**, pp. 54:15-55:7. The COWS protocol for an individual who scored moderately is to be "seen at least, every eight (8) hours, approximately (3) times a day." *See* **Exhibit D**, p. 57:1-7. "Patients that are more severe go into the medical treatment area, which has multiple clinics in it, even at night, which is [also] physically adjacent to the intake space and the screening space, and would be observed there if they are experiencing more severe symptoms." *See* **Exhibit D**, p. 58:8-13. If an individual was in severe withdrawal and PDP's "usual monitoring following nationally prescribed COWS protocol was not sufficient," that person would be sent to the hospital. *See* **Exhibit D**, pp. 55:8-20, 57:7-8.

On July 23, 2021, at approximately 2:30 AM, Mr. Rosario Lopez refused his second administered COWS assessment. *See* **Exhibit A**, CITY_0004, 00023. Later that morning, at approximately 8:00 AM, Mr. Rosario Lopez's vitals were taken and underwent a third administered COWS assessment. *See Excerpts of Progress Notes*, CITY_0124-127, attached hereto collectively as **Exhibit E**. His COWS score reduced to 13, which is still moderate, and medical monitoring was ordered to continue. *See* **Exhibit E**, CITY_0126. Later that evening, at 4:40 PM, a correction officer opens the door to Cell #10. *See* **Exhibit B**, Intake Corridor 2 Screen at 4:40:26 PM. Mr. Rosario Lopez stands up of his own volition, puts down what appears

to be a blanket, and walks out of Cell #10. *See* **Exhibit B**, Intake Corridor 1 Screen, at 4:40:41-4:40:59. He leans on the security desk before falling to the floor and standing up on his own. *See* **Exhibit B**, Intake Corridor 2 Screen, at 4:41:09-4:41:56. A stretcher call was placed by a corrections officer as Mr. Rosario Lopez fell to the floor again and became unresponsive. *See* **Exhibit A**, CITY_0004, 0023; *see also* **Exhibit E**, CITY_0108-11, 0115-20, 0122-23. Emergency medical aid was rendered, and he received nasal Narcan twice. *See Id*. He was brought to the medical triage area from the Receiving Area. *See* **Exhibit E**, CITY_0108. EMS was contacted and he was referred to the emergency room of Nazareth Hospital. *See Id*., CITY_0108-11. Notably, while awaiting transport, Mr. Rosario Lopez was able to talk and move all of his extremities. *See* **Exhibit B**, at 5:17:49 PM -5:28:44 PM. Prior to transport, EMT staff noted that Mr. Rosario Lope was awake, alert, oriented and able to answer questions appropriately and in complete sentences. *See EMS Report*, attached hereto as **Exhibit F**. Mr. Rosario Lopez left CFCF without incident and was transported to Nazareth Hospital for further treatment. *See Id*; *see also* **Exhibit B**, at 5:28 PM. Notably, Mr. Rosario Lopez's transport to Nazareth Hospital was classified as non-emergent. *See* **Exhibit F**. He was transferred to Nazareth Hospital in non-critical, stable condition and without incident. *See Id*.

Upon admission to Nazareth Hospital he was administered adenosine after an elevated heart rate was noted. *See City of Philadelphia Office of the Medical Examiner Report* attached hereto as **Exhibit G**, CITY_0208. He then went into respiratory distress and was intubated. *Id*. Mr. Rosario Lopez then experienced a loss of pulse nine (9) different times. *See Id*. His condition continued to decline and he was pronounced deceased on July 27, 2021. *See Id*. The Philadelphia Medical Examiner determined that the cause and manner of death was an accident due to complications of drug intoxication (fentanyl, xylazine, hydroxyzine). *See Id*., CITY_0207.

## III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty lobby, inc.*, 477 U.S. 242, 249 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *See Id*. All inferences must be drawn, and all doubts resolved in favor of the non-moving party. *See Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). However, "an inference based on speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Modaffore v. Owens-Brockway Glass Container, Inc.*, 643 F. Supp. 2d 697, 699–700 (E.D. Pa. 2009) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

On motion for summary judgment, the moving party bears the initial burden of identifying these portions of the record that it believes demonstrate the absence of material fact disputes. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the moving party and may not rest on mere denials. *See Id*. at 321, n.3; *see also First Natl. Bank of Pa. v. Lincoln Natl. Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir. 1987); *Adderly v. Ferrier*, 419 Fed. Appx. 135, 136 (3d Cir. 2011). Further, in a case where the non-moving party is the plaintiff and therefore bears the burden of proof, the non-moving party must, by affidavits or by the depositions and admissions on file, "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Celotex*, 477 U.S. at 322-24. The plaintiff must show there is more than some metaphysical doubt as to the material facts. *Modaffore*, 643 F.

Supp. 2d at 699–700 (E.D. Pa. 2009). The non-moving party must adduce more than a mere scintilla of evidence in its favor to defeat the moving party's summary judgment motion. *See Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989). And, when ruling on a motion for summary judgment, the Court may only rely on admissible evidence. *See Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 94-95 (3d Cir. 1999).

Although all justifiable inferences must be drawn in favor of the non-moving party, the "moving party is entitled to summary judgment where no reasonable resolution of conflicting evidence and inferences therefrom could result in a judgment for the non-moving party." *Schwartz v. Hospital of Univ. of Pa.*, 1993 WL 153810 at *2 (E.D. Pa. May 7, 1993) (citations omitted). Furthermore, the "[p]laintiff cannot simply reassert factually unsupported allegations in its pleadings." *Poles v. St. Joseph's Univ.*, 1995 WL 542246 at *5 (E.D. Pa. Sept. 11, 1995) (*citing Celotex*, 477 U.S. at 325). Instead, the plaintiff "***must present affirmative evidence*** in order to defeat this properly supported motion for judgment." *Id.* (emphasis added).

## IV. LEGAL ARGUMENT

### A. Summary Judgment Should be Granted in Favor of Blanche Carney on Plaintiff's Fourteenth Amendment Claim in Count I As There is No Evidence of her Deliberate Indifference to Decedent's Alleged Serious Medical Conditions/Need.

The due process rights of pretrial detainees under the Fourteenth Amendment incorporate the Eighth Amendment standard, under which prison officials are liable for constitutional violations when they are "deliberately indifferent to the serious medical needs of an inmate." *Despaigne v. Crolew*, 89 F. Supp.2d 582, 585 (E.D. Pa. 2000). In order to prove deliberate indifference under this standard, a plaintiff must demonstrate that the individual who allegedly did not receive medical care displayed objective signs of a "sufficiently serious" medical need *and* that the defendants were *subjectively aware* of a substantial risk of serious harm but

nonetheless made the deliberate choice to take no action. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Fox v. Horn*, No. 98-5279, 2000 WL 49374, at **3-4 (E.D. Pa. Jan. 21, 2000); *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002).

Put differently, under the standards set forth by the United States Supreme Court in *Farmer*, for liability to attach "defendants have to be aware of the facts which cause one to infer that a substantial risk of harm exists, and [must] actually make the inference." *Fox*, 2000 WL, at *4 (*citing Farmer*, 511 U.S. at 837)). Courts refer to these two separate requirements as the "objective" and "subjective" components of the deliberate indifference standard. *See Hankey v. Wexford Health Sources, Inc.*, 383 F. App'x 165, 168-69 (3d Cir. June 4, 2010) (*citing Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002)). Needless to say, this standard exceeds negligence. *Farmer*, 511 U.S. at 835 (1994). Importantly, even where an official fails to alleviate a significant risk she should have known about, but did not, the conduct falls below the deliberate indifference standard. *See Id*. at 838. In this matter, Plaintiff has failed to adduce evidence sufficient to create a genuine issue of material fact as to either of these requirements. The record is completely devoid of Blanche Carney's involvement and lacks evidence of actual knowledge required for deliberate indifference. *See Best v. Essex Cnty. Hall of Records*, 986 F.2d 54, 56 (3d Cir. 1993) (granting summary judgment where causation was speculative).

1. <u>Blanche Carney Had No Personal Involvement in the Conduct Underlying Plaintiff's Claim.</u>

A defendant in a civil rights action must have had personal involvement in committing the alleged violation to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195 (3rd Cir. 1988). *See also Robinson v. Kirsch*, No. 19-CV-953, 2020 WL 247835, at *3 (E.D. Pa. Jan.15, 2020) (Pappert, J.); *Reaves v. Vaugh*, 2001 WL 936392 at * 4 (E.D. Pa., Aug. 10, 2001) (vicarious liability does not apply to §1983 claims); *Evancho v. Fisher*, 425 F.3d 347, 353 (3d Cir. 2005) (same); *Eppers*

*v. Dragovich*, 1996 WL 420830 at * 4 (E.D. Pa., July 24, 1996) (defendant in civil rights claim must have "personal involvement" in alleged wrongs); *Gorrio v. Shorter* No. 23-4807, 2024 WL 2188910, at *5 (E.D. Pa. May 15, 2024) (the Court granted dismissal as to supervisory defendants because there were "no factual allegations suggesting that any of these defendants participated in, knew of, or had any reason to know of" the risk to the plaintiff). Furthermore, "personal involvement ***requires*** particular allegations of personal direction or actual knowledge and acquiescence." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020). It is thus axiomatic that state actors cannot be held vicariously liable under § 1983 for the actions of other state actors. *See Parratt v. Taylor*, 451 U.S. 527, 537 n.1 (1981). Any liability of an individual official, such as Blanche Carney, must "be based on [her] own acts or omissions, not those of [other] individual officers." *Agresta v. City of Philadelphia*, 801 F. Supp. 1464, 1468 (E.D. Pa, 1992).

Here, Plaintiff has not adduced any evidence that Blanche Carney had any personal involvement in the conduct underlying Plaintiff's claims. As in *Gorrio v. Shorter*, it is insufficient that Blanche Carney is named because of her high-level positions or presence in the relevant chain of command. There is no evidence in the record that former Commissioner Blanche Carney had any personal involvement in the arrest of Mr. Rosario Lopez on July 21, 2021, the intake of Mr. Rosario Lopez at CFCF on July 22, 2021, during his overnight detention at CFCF, from July 22, 2021, to July 23, 2021, or the medical decision and his transfer to Nazareth Hospital on July 23, 2021. Plaintiff has not adduced any evidence that Blanche Carney was involved in a specific failure to provide Mr. Rosario Lopez with medical treatment, either by way of "personal direction" or "actual knowledge and acquiescence." *See Rode*, 845 F.2d at 1207. At most, the record indicates that Blanche Carney may have been aware of Mr. Rosario Lopez's medical status *after* his death. *See* **Exhibit D**, at pp. 26:22 – 27. Importantly, there is no

record evidence that Mr. Rosario Lopez was suffering from any demonstrable serious medical need that Blanche Carney was subjectively aware of – and disregarded – an excessive risk to Mr. Rosario Lopez's health or safety.

Consequently, summary judgment should be granted on Count I in favor of Blanche Carney and Plaintiff's claims against her dismissed.

2. Defendant Blanche Carney is Entitled to Qualified Immunity on Plaintiff's Deliberate Indifference to Serious Medical Conditions/Need Claim

Government officials engaged in discretionary functions are entitled to qualified immunity from § 1983 suits unless there is a showing that (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (*citing*, *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity shields officers from liability unless it is "beyond debate" that the federal right they allegedly violated was "clearly established at the time of the challenged conduct." *See George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013) (internal quotation marks omitted); *see also Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010).

"[C]ourts may grant qualified immunity on the ground that a purported right was not 'clearly' established by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Reichle*, 566 U.S. at 664 (2012) (citations omitted). A right only qualifies as clearly established if its "contours . . . are sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." *See Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2078 (2011) (*citing*, *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). And thus conversely, "[t]he principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the

law." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). Furthermore, the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality since doing so avoids the crucial question of whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (internal citations and quotations omitted); *see also Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (the "dispositive question is whether the violative nature of *particular* conduct is clearly established" and such "inquiry must be undertaken in light of the specific context of the case"). Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Anderson*, 483 U.S. at 638 (1987), *quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In this matter, former Commissioner Blanche Carney is protected under the first prong of the qualified immunity analysis because, for the reasons discussed above, Plaintiff cannot and has not established on the record evidence that she violated Mr. Rosario Lopez's Fourteenth Amendment right. Additionally, Blanche Carney is protected by qualified immunity under the second prong of the analysis because Plaintiff can point to no precedential law that clearly establishes Mr. Rosario Lopez's right to have Blanche Carney provide him with more medical care than he received under the facts of this case. Accordingly, Blanche Carney is entitled to qualified immunity.

**B. Summary Judgment Should be Granted in Favor of City Defendants on Plaintiff's Monell Claims, in Counts II and III, as Plaintiff Failed to Adduce Record Evidence to Establish the Elements of and Support the Same Against City Defendants.**

Liability can only be imposed against a municipality where there is evidence that a constitutional violation by a municipal actor was the result of a municipal policy, custom or practice. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–95 (1978). A policy occurs when a decisionmaker with final authority "issues an official proclamation, policy,

or edict"; a custom occurs when practices are "so permanent and well-settled as to virtually constitute law." *Mulholland v. Cnty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (citations and quotation marks omitted). Municipal liability only attaches when "execution of [the] policy or custom . . . inflicts the injury." *Monell*, 436 U.S. at 694.

"The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986) (emphasis in original). A municipality cannot be held liable under § 1983 for its employees' constitutional torts by way of *respondeat superior*. *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005) (*citing Monell*, 436 U.S. at 694 (1978)). Rather, under *Monell*, a municipality may be liable if the employee acted pursuant to a government policy or custom. *Monell*, 436 U.S. at 694.

To succeed on a *Monell* claim, Plaintiff must establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the unconstitutional policy or custom was the moving force behind the violation. *See Monell*, 436 U.S. at 690-695; *see also Bd. of Cnty. Commrs. of Bryan Cnty. v. Brown*, 520 U.S. 397 404 (1997) (the plaintiff must prove the municipality's alleged practices are "so widespread as to have the force of law" before municipal liability will be imposed); *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996); *Andrews v. City of Philadelphia*, *superseded by statute on other grounds*, 895 F.2d 1469, 1480 (3d Cir. 1990). Thus, to prevail on a *Monell* claim, proof of a deficient "policy" or "custom" is not enough, standing alone, as a plaintiff must also establish "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation" to constitute *Monell* liability. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). This "link" must be so

direct as to establish that the allegedly deficient policy or custom was the *moving force* behind the plaintiff's alleged injury. *Brown*, 520 U.S. at 407–08; *see also Robinson v. City of Philadelphia*, NO. 15-1574, 2015 WL 5965003, at *11 (E.D. Pa. Oct 13, 2015).

Plaintiff's claims against City Defendants fail because there is no underlying constitutional violation and Plaintiff has not developed any evidence of an unconstitutional policy, custom or practice that was the moving force behind Mr. Rosario Lopez's death.

1. Plaintiff's Claim Against Blanche Carney in her Official Capacity Must be Dismissed Because Such Claims are Properly Brought Against the City of Philadelphia.

Count II (Failure to Train, Supervise and Discipline) and Count III (Custom, Pattern, Practice and Policy) of Plaintiff's Amended Complaint (ECF Doc. 33) purports to sue former Commissioner Blanche Carney in her "official capacity." Any such claims fail as a matter of law. In *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985), the Supreme Court held that a suit brought against a public official in their official capacity is equivalent to a suit brought against the public entity. The Court explained that official capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent." *Id*. Such suits, "in all respects other than name, to be treated as a suit against the entity. It is *not* suit against the official personally, for the real party in interest is the entity." *Id*. (citations omitted). A suit against a government official in their official capacity is a suit against the government entity. *See Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988) (*citing Monell*, 436 U.S. 658, 690 n.55 (1978)). Accordingly, to the extent Plaintiff's *Monell* claims can survive at all against Commissioner Carney, it would effectively be a claim against the City, the real party in interest.

Therefore, as a threshold matter all claims brought against Blanche Carney in her official capacity are properly treated as an action against the City of Philadelphia ("City"). *See Stana v.*

*School District of Pittsburgh*, 775 F.2d 122, 130 (3rd Cir. 1985) (actions of an official acting in his or her official capacity are to be equated with the actions of the City itself).

Accordingly, Plaintiff's *Monell* claims against Blanche Carney must be dismissed.

2. Plaintiff's Failure to Establish an Underlying Constitutional Violation Necessitates the Dismissal of His Municipal Liability Claim

Where there is no underlying constitutional tort by individuals, there can be no municipal liability leveled against the City. *See City of Los Angeles v. Heller*, 475 U.S. 796, 798–99 (3d Cir. 1995). So, as an initial matter, because Plaintiff has failed to adduce evidence that any prison official violated Mr. Rosario Lopez's right to adequate medical care, summary judgment must be granted in favor of the City as well.

3. The Record is Void of Evidence that City Defendants Were Deliberately Indifferent to Mr. Rosario Lopez's Serious Medical Need/Condition

Even if the underlying claim survives, Plaintiff's claims against the City must be dismissed because there is no record evidence of any policy or custom of the City in the first place that *might* have caused a constitutional violation. Plaintiff's claim the City lacks policies to monitor prisoners in general, or particularly deny care and treatment of pre-trial detainees suffering from drug withdrawal or overdose, is simply incorrect.

*Estelle v. Gamble* is the keystone case for a failure to provide adequate medical treatment claim in a corrections setting.[4] 429 U.S. 97 (1976). There, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and

[4] *Estelle*'s review is an Eight Amendment analysis as the Plaintiff was a convicted inmate. However, the Third Circuit employs the same analysis when reviewing the Fourteenth Amendment. *See Boring v. Kozakiewicz*, 833 F.2d 468, 472 (3d Cir. 1987) ("[W]e found the *Estelle v. Gamble* standard to be appropriate in evaluating claims that inadequate psychiatric care had been provided in the jail. A similar situation exists here. . . . The fact that this institution houses convicted prisoners as well as pretrial detainees would pose a practical administrative problem if different standards were to be applied to each group."); *see also Balas v. Stanish*, No. 20-CV-5386, 2021 WL 601095, at *2 (E.D. Pa. Feb. 16, 2021) (Robreno, J.) ("Courts generally apply the same standard to claims raised by pretrial detainees based on inadequate medical care." (citing *Brown v. Deparlos*, 492 F. App'x 211, 214 (3d Cir. 2012) (per curiam); *Duran v. Merline*, 923 F. Supp. 2d 702, 729 (D.N.J. 2013); *King v. Cty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008) ("assessment of detainee's claim based on denial of medical care 'involves an indirect application of the Eighth Amendment deliberate indifference standard'")).

wanton infliction of pain,' proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id*. at 104–05 (internal cites omitted); *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (holding that a plaintiff must demonstrate (1) he had a serious medical need, and (2) prison officials acted with deliberate indifference to that need to succeed on a failure to provide adequate medical treatment claim). Here, the record is void of any evidence that City Defendants denied Mr. Rosario Lopez access to medical care. And having a serious medical need alone is insufficient to succeed on this claim.

Third Circuit precedent makes clear that deliberate indifference can occur in a multitude of ways in the incarceration setting. Examples of such deliberate indifference include if there is an improper dismissal of an "excessive risk to inmate health or safety;" or a delay of "necessary medical treatment [] for non-medical reasons;" or implementation of "arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates." *Sylvester v. City of Newark*, 120 F. App'x 419, 423–24 (3d Cir. 2005) (cleaned up) (internal quotes and citations omitted). However, the Third Circuit has also made clear "that 'a non-medical prison official' cannot 'be charge[d] with the Eighth Amendment scienter requirement of deliberate indifference' when the 'prisoner is under the care of medical experts' and the official does not have 'a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 543 (3d Cir. 2017) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) ("holding that non-physicians cannot 'be considered deliberately indifferent simply because they failed to respond directly to the medical

complaints of a prisoner who was already being treated by the prison doctor.'"). To this point, the District of Delaware indicated, "[w]e don't require prison guards to earn medical degrees and thus we don't hold them liable for their failure or inability to diagnose medical conditions that a layperson would not recognize." *DeJesus v. Drace*, No. 15-1065, 2021 WL 3145191, at *4 (D. Del. July 26, 2021).

"Pretrial detainees have a qualified 'right to refuse unwanted medical treatment,' which controls unless the detainee has demonstrated that he is dangerous to himself or others." *King v. Cnty. of Gloucester*, 302 F. App'x 92, 98, n. 4 (3d Cir. 2008) (quoting *White v. Napoleon,* 897 F.2d 103, 112, 113 (3d Cir.1990)). The Supreme Court, when reviewing this topic, indicated that

> we recognized that prisoners possess a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment. Still other cases support the recognition of a general liberty interest in refusing medical treatment.
>
> But determining that a person has a "liberty interest" under the Due Process Clause does not end the inquiry; whether respondent's constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests.
>
> Petitioners insist that under the general holdings of our cases, the forced administration of life-sustaining medical treatment, and even of artificially delivered food and water essential to life, would implicate a competent person's liberty interest. Although we think the logic of the cases discussed above would embrace such a liberty interest, the dramatic consequences involved in refusal of such treatment would inform the inquiry as to whether the deprivation of that interest is constitutionally permissible. But for purposes of this case, we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition.

*Cruzan by Cruzan v. Dir., Missouri Dep't of Health*, 497 U.S. 261, 278–79 (1990) (cleaned up).

Importantly, a plaintiff's burden is even higher to establish that a non-medical prison official engaged in deliberate indifference when the plaintiff *was* receiving medical treatment. In *Spruill*, the Court explained that where there is current, active treatment by a medical

practitioner, "a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill*, 372 F.3d at 236. To hold "a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-medical officials could even have a perverse incentive not to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability." *Id*.

In this matter, Plaintiff has not created a record that indicates City Defendants were deliberately indifferent to Mr. Rosario Lopez's medical need/condition, failed to render medical care or initiate emergency treatment. The record is bereft of any indication that City Defendants deliberately disregarded or delayed treatment or that his current medical treatment was inadequate. Rather, within minutes of his arrival to CFCF on July 22, 2021 until his transfer to Nazareth Hospital on July 23, 2021, Mr. Rosario Lopez was placed under medical monitoring, administered withdrawal medication and provided immediate medical attention when his condition began to decline. *See* **Exhibits A-B** and **E-G**. This is not the type of conduct that "prison doctors or their assistants are mistreating (or not treating) a prisoner.'" *Pearson*, 850 F.3d at 543. "Deliberate indifference is a stringent standard of fault, requiring that a municipal actor disregarded a known or obvious cause of his action." Id. (citations and quotation marks omitted). Here, Plaintiff has adduced no evidence that could be deemed to rise to this level of fault. The record in fact precludes any rational factfinder from making such a finding given policies prioritizing the health of detainees. *See* **Exhibits C and D**.

Moreover, even if Plaintiff could establish deliberate indifference, he cannot ascribe it to any municipal policymaker, as is also required. *See Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 737 (1989) (plaintiff must prove decision of final policymaker caused the deprivation of rights

by policies or by acquiescence in a longstanding custom or practice that constitutes a standard operating procedure of the local government entity). Once a policymaker is so identified, "plaintiffs must present scienter-like evidence of indifference on the part of [such] policymaker." *Beswick v. City of Philadelphia*, 185 F. Supp. 2d 418, 427 (E.D. Pa. 2001) (emphasis added, quotation marks omitted). Liability can *only* attach if record evidence demonstrates that the policymaker made a deliberate choice to follow a particular course of action from among various alternatives. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Here, no such evidence exists. The policymaker or the "scienter-type evidence" of deliberate indifference are absent from the record.

4. There is No Evidence Any Custom or Policy Was the Moving Force Behind Plaintiff's Alleged Harms in This Case

Most critically, however, *Monell* liability is a high bar, rather than premised on brainstorming process improvements and speculating that they might have changed the outcome. Plaintiff cannot show any alleged City policies or customs were the *moving force* behind a constitutional violation. A court cannot "impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the "moving force" behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 400 (1997) (emphasis in original). "A plaintiff must show that a municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id*. at 404. A careful analysis of the causal link is required "[t]o prevent municipal liability . . . from collapsing into *respondeat superior* liability." *Id*. To defeat summary judgment, Plaintiffs must prove that 'a [local] government's policy or custom ... inflict[ed] the injury' in question." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (alterations in original) (*quoting Monell*, 436 U.S. at 694).

In this matter, because no state actor violated Mr. Rosario Lopez's Fourteenth Amendment rights, the direct claims against City Defendants fails as a matter of law. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)(the Supreme Court has determined that a finding of a constitutional violation is a prerequisite to finding municipal liability). Because it is "well-settled that, if there is no violation in the first place, there can be no derivative municipal claim," the District Court's dismissal of the 1983 claim should be affirmed. *Mulholland*, 706 F.3d at 238 n.15 (3d Cir. 2013). Thus, Plaintiffs' municipal liability claim must be dismissed.

Additionally, City Defendants are not deliberately indifferent to inmates with serious medical needs. City of Philadelphia contracted with Corizon to provide medical services to inmates. *See* **Exhibit D**. In this matter, Mr. Rosario Lopez was medically screened and treated by physicians, nurses and other medical personnel. Plaintiff has no proof that the City of Philadelphia's policy is unconstitutional on its face or that this policy was enacted with deliberate indifference to the rights of inmates. As such, Plaintiff's *Monell* claims fails as a matter of law.

**C. Plaintiff's Wrongful Death Claim, in Count IV, Is Derivative of Plaintiff's Underlying § 1983 Claims and Must Be Dismissed.**

Plaintiff's wrongful death and survival claims, as asserted in Count IV of Plaintiff's Amended Complaint (ECF Doc. 33, Count IV), must be dismissed because they are derivative in nature. They are not substantive causes of action. *Adams v. Henry*, 416 F.Supp.3d 424, n. 1 (E.D. Pa. 2019) (citations omitted). A cognizable underlying claim must be brought in support of wrongful death and survival actions. *Id.* They may be brought in a § 1983 case as a vehicle to recover for unlawful conduct resulting in death. *Id.* It follows, then, as derivative claims, if the underlying substantive claim is dismissed, so too must the wrongful death and survival claims. If

the Court grants summary judgment in favor of the City Defendants on all substantive claims, then Plaintiff's wrongful death and survival claims must be dismissed as well.

## V. CONCLUSION

For all the foregoing reasons, and Plaintiff having failed to develop or adduce sufficient evidence for a jury to decide the claims in his Amended Complaint against the City of Philadelphia and Blanche Carney, this Honorable Court should grant summary judgment and dismiss his claims with prejudice.

Respectfully submitted,

*/s/ Laquan T. Lightfoot*

Laquan T. Lightfoot, Esquire
PA Attorney ID No.: 318716
Senior Attorney
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102-1595
(215) 685-8403 (T) (215) 683-5397 (F)
*laquan.lightfoot@phila.gov*

Date: September 25, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUAN ROSARIO SANTIAGO**, as Administrator of the Estate of JUAN YADIEL ROSARIO LOPEZ, deceased,<br>Plaintiff,<br><br>**v.**<br><br>**CITY OF PHILADELPHIA, et al.**,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **CIVIL ACTION**<br><br>**NO.: 2:23-cv-03317-MKC** |

**CERTIFICATE OF SERVICE**

I hereby certify that on the date below, Defendants', City of Philadelphia and Blanche Carney, Motion for Summary Judgment was filed via the Court's electronic filing system and is available for downloading upon all counsel of record.

*/s/ Laquan T. Lightfoot*

Laquan T. Lightfoot, Esquire
PA Attorney ID No.: 318716
Senior Attorney
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102-1595
(215) 685-8403 (T) (215) 683-5397 (F)
*laquan.lightfoot@phila.gov*

Date: September 25, 2026